[No. C066792. Third Dist. Aug. 22, 2012.]

SHAUN TYLER SMITH, Plaintiff and Appellant, v.
TIFFANY SMITH, Defendant and Respondent.

## COUNSEL

Northern California Law Center and James P. Chandler for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

## OPINION

**HOCH, J.**—In this case, appellant Shaun Tyler Smith and respondent Tiffany Smith accuse each other of drug addiction and abuse of the judicial process in an ongoing fight for custody of their son. Shaun[1] appeals from two orders.

Shaun appeals from an order refusing to destroy certain family court records that contain references to his juvenile records, and redacting any

---

[1] Due to a shared surname, we refer to the parties by their first names.

references to his juvenile records in the reports that were prepared to assist the family court in determining custody: a mediation report, a substance abuse evaluation, and a child custody evaluation (collectively, the reports). Shaun contends the authors of the reports acted unlawfully in accessing his prior juvenile records, especially in light of a San Mateo County Superior Court (juvenile court) order to seal his juvenile records. He further argues that the family court's consideration of these "tainted" documents undermines his "fundamental right to raise and protect" his minor son. Thus, Shaun urges us to conclude that the family court was required to order the destruction of every report in the present case that referred to the San Mateo County juvenile records.

Shaun also appeals from a temporary custody order that took effect upon dissolution of a restraining order issued under the Domestic Violence Prevention Act (DVPA). (Fam. Code, § 6200 et seq.) The prior restraining order had given Shaun legal and physical custody of his son, and conferred only visitation rights to Tiffany. He argues that the temporary custody order must be vacated because "[a]t no time during the proceedings in Placer County did [Tiffany] demonstrate a change in circumstances warranting a change in custody."

After requesting briefing from the parties on the appealability of the orders Shaun seeks to challenge, we conclude that the order redacting the reports' references to Shaun's juvenile records is appealable. On the merits, we conclude that the authors of the reports did not inspect any documents contained in Shaun's juvenile records and, in any event, the reports were completed before the sealing of Shaun's juvenile records. After reviewing the reports, we conclude that there was no prejudice to Shaun because none of the reports' recommendations or conclusions relies on Shaun's juvenile records. Finally, the reports are not themselves juvenile records subject to sealing and destruction under the juvenile court's order. Thus, the family court did not err in redacting any references to Shaun's juvenile records and refusing to order the reports to be destroyed.

As to Shaun's second appeal, we conclude that it must be dismissed because it is taken from a nonappealable temporary custody order.

## BACKGROUND

Tiffany has not filed a respondent's brief.[2] As a result, we may accept as true the facts stated in Shaun's opening brief. (*Miles v. Speidel* (1989) 211

---

[2] Tiffany also did not file a response to the court's request for briefing on the appealability of the orders Shaun seeks to challenge.

Cal.App.3d 879, 881 [259 Cal.Rptr. 582]; Cal. Rules of Court, rule 8.220(a)(2).) Nonetheless, Shaun still bears the "affirmative burden to show error whether or not the respondent's brief has been filed," and we "examine the record and reverse only if prejudicial error is found." (*In re Marriage of Davies* (1983) 143 Cal.App.3d 851, 854 [192 Cal.Rptr. 212].)

*Custody*

Shaun and Tiffany separated in January 2008. Their son was nearly a year old at the time.

In August 2008, Shaun obtained a restraining order against Tiffany from the El Dorado County Superior Court which, by its terms, expired in December 2008. Attached to the restraining order was a child custody and visitation order that gave Shaun legal and physical custody of their son and conferred visitation rights upon Tiffany. Also attached was an order directing Tiffany to seek substance abuse treatment. Both Shaun and Tiffany were ordered to enroll in a coparenting class and an age-appropriate parenting class, and to maintain peaceful contact as to visitation.

In March 2009, a temporary custody order modifying Tiffany's visitation schedule was issued by the El Dorado County Superior Court. Three months later, Tiffany obtained an order directing Shaun to return their son to her until July 2, 2009, the date of the next scheduled hearing. Shaun apparently did not comply with the order.

At the conclusion of the July 2, 2009, hearing, the El Dorado County Superior Court ordered that the prior temporary custody and visitation schedule would remain in effect pending the mediation hearing, and ordered each parent to allow the other to pick up their son according to schedule. The court also set a review hearing for August 20, 2009. The record on appeal does not reveal whether these hearings were held. Nor does it reveal whether any orders were entered regarding custody.

Shaun subsequently moved from El Dorado County to Placer County. On December 31, 2009, Shaun filed an application for a restraining order against Tiffany in the Placer County Superior Court (family court) and also requested that the previous custody order be reaffirmed. The record on appeal does not contain this application or the court's ruling thereon. The record does reveal that Shaun and Tiffany were ordered to attend mediation services in order to "establish and implement mutual agreements regarding a parenting plan" for their son, who was then three years old.

*The Sloper Mediation Report*

In April 2010, Shaun and Tiffany were separately interviewed by mediator Sharon Sloper, a marriage and family therapist. Among other things, Sloper's report notes two child protective services reports filed by Shaun against Tiffany. The first was deemed "unfounded" and the second was " 'evaluated out' which means that CPS did not find a need to investigate. There are no records of any reports by the mother."

The mediation report further notes: "CLETS [(California Law Enforcement Telecommunications System)]: Summary for the father is *'Two potential entries with felony conviction date were found for this subject.'* The father's CLETS report is 9 pages long with multiple arrests, bench warrants, 'pleas to other charges' . . . , Possession of a controlled substance (2003), DUI (2003), Possession of Control[led] Substance Paraphernalia (2003), Receiving Stolen Property (2003 with a sentence of one year in jail), Use of a controlled substance (2004)[,] Driving with suspended license (2004) and Battery, 242, (2004). [¶] The mother's background check documents the current restraining order protecting the father and his family from the mother." The redacted portion of the mediation report is in the middle of the summary of CLETS entries.

Sloper's report concluded that joint legal and physical custody would be in the best interests of the parties' son. The discussion section of the report, immediately preceding this conclusion, states: "The issues presented by the parents are complex and are ideal for case management through the STEP program.[3] Each parent indicated that they would be willing to participate. The father presents as frustrated, yet wanting to 'build a case' as he states 'El Dorado County was biased against [him]' so he moved and requested a change of venue. The mother presents as credible, yet meek. Obviously the analysis of the presentations of the parents is subject to interpretation, yet may also provide a clue to the underlying dynamics of the family."

*The Moore Substance Abuse Evaluation*

In May 2010, Shaun and Tiffany submitted to a substance abuse evaluation conducted by Colleen Moore, a licensed marriage and family therapist and master addiction counselor. Tiffany's evaluation is not included in the appellate record. Shaun's evaluation includes a substance use history. In this

---

[3] The STEP program is "a voluntary program for court-referred families in Placer County" who "are experiencing high conflict child custody litigation in the Placer Superior Court." (Placer County Super. Ct., The Placer Superior Court STEP Program <http://www.placer.courts.ca.gov/family/family_step-program.html> [as of Aug. 22, 2012].)

history, the report notes that Shaun admitted to having "a history of methamphetamine dependence" beginning "at 18 years old," but that he "completed a one year residential treatment program in 2005-06." With respect to marijuana, the report stated that Shaun "first used marijuana at 13 years old. He reported that in high school he had an athletic injury and began hanging out with a 'bad crowd.' It was at this time he began using marijuana on a daily basis. . . . He quit marijuana when he quit methamphetamines in 2005. He then used medical marijuana 1-2 months after his cancer diagnosis in 2006 and up until he was arrested for cultivating marijuana in early 2007. He reported that he has not used marijuana since this time." With respect to alcohol, Shaun stated that he "first consumed alcohol at 14 or 15 years old . . . but because his father was an alcoholic he was mindful about how much he drank." Shaun also admitted to trying cocaine, Ecstasy, and mushrooms. The redacted portion of the substance abuse evaluation is in the middle of the summary of Shaun's marijuana use.

Moore concluded that Shaun "has a history of methamphetamine dependence and a history of daily marijuana use and abuse. This evaluation found no evidence to suggest current drug abuse or dependence problems. This evaluation is inconclusive regarding current alcohol consumption patterns. These findings are based upon [Shaun's] self-report, collateral information from [Tiffany] and [an] inpatient treatment episode for methamphetamine dependence." Moore noted a number of reasons she found Shaun to be an "unreliable self-reporter." Moore also noted that she doubted his "abstinence dates," explaining: "It is uncommon for someone involved in NA to not remember his or her exact clean date. [Shaun] reported in our interview that the last time he used methamphetamines was 'probably December 2003'. He could not remember the exact date. Additionally [Shaun] was notably vague about his alcohol use over the last five years, suggesting more consumption than reported." Moore further explained: "Given his methamphetamine dependence and treatment history, his use of alcohol and marijuana shows poor judgment. [Shaun] fully knows that NA does not condone the use of mood altering substances when practicing abstinence from your drug of choice. This is commonly taught in treatment programs as well. Research shows that methamphetamine users, one year after a treatment episode had an 80% chance of relapse when drinking alcohol and [a] 50% chance of relapse when smoking marijuana." Moore recommended "complete abstinence from alcohol, non alcoholic substitute beverages, illicit drugs and medical marijuana" and further recommended a drug testing plan to confirm Shaun's abstinence.

*Shaun's Request to Seal and Destroy the Sloper Mediation
Report and Moore Substance Abuse Evaluation*

On May 25, 2010, Shaun filed an order to show cause requesting that the family court seal and destroy Sloper's mediation report and Moore's substance abuse evaluation due to the references to his juvenile records. At the hearing, the court apparently declined to seal and destroy these documents and referred Shaun to San Mateo County Superior Court on grounds that only the juvenile court had jurisdiction to order the destruction of his juvenile records. The record on appeal does not contain a transcript of this hearing.

*Dissolution Judgment*

In July 2010, Shaun and Tiffany obtained a judgment of dissolution from the family court. This judgment contained a "Stipulated Judgment" in which Shaun and Tiffany agreed "there is a more recent proceeding being heard in Placer County Superior Court; Case No. SDR35507 and shall continue to hold jurisdiction over the child of this marriage; therefore the parties agree to terminate this court's jurisdiction over Child Visitation."

*The Dugan Custody Evaluation*

On August 9, 2010, a custody evaluation was filed by Kevin J. Dugan, Ph.D., a licensed psychologist. Dugan described the "central conflict" as follows: "The mother on this matter strongly asserts it is in [son's] best interests to have a joint custody equal time-share arrangement. The father on this matter agreed that ideally this would be in [son's] best interests, but expressed ongoing concern regarding alleged unresolved substance abuse and disruptive behavior problems for the mother. . . . In sum, the father alleges the mother likely has unresolved substance abuse and anger management concerns, citing allegations of previous poly-substance abuse patterns, nonadherence to Court orders (inclusive of alleged restraining order violations). The mother alleged the father is deliberately engaging in fabricating allegations, relentless accusation and litigation patterns, and perhaps sociopathic-like behaviors inclusive of planting evidence, illegally taking pictures and engaging in attempts to overwhelm her with allegations and formal motions/requests filed with the Court."

The report does not refer to any juvenile proceedings, but includes the reports of Sloper and Moore in a long list of documents reviewed by Dugan.

Dugan's custody evaluation concluded that joint legal and physical custody would be in the best interests of the parties' son.

*Shaun's Motions to Seal and Destroy His Juvenile Records*

On August 20, 2010, the juvenile court ordered the sealing of Shaun's juvenile records in the custody of the San Mateo County Clerk, the San Mateo County Probation Department, the San Mateo County District Attorney, the San Mateo Police Department, and the Department of Motor Vehicles.

On September 9, 2010, Shaun filed a motion for reconsideration in the family court again asking that the mediation report and substance abuse evaluation be sealed and destroyed. Shaun also filed in the juvenile court a petition to modify the previous order sealing his juvenile records to include "a listing of agencies that still have [his] juvenile records that were sealed on August 20, 2010." Among the agencies listed by Shaun was the "Placer County Superior Court—Family Law Case No. SDR-35507." Under the agency listing, Shaun listed the mediation report, the substance abuse evaluation, and the custody evaluation as examples of the juvenile records purportedly held by the family court. The petition to modify was granted by the juvenile court on September 22, 2010.

On November 10, 2010, the family court ordered references to Shaun's juvenile records redacted from the mediation report and substance abuse evaluation, but did not order these documents destroyed. No redactions were ordered for the child custody evaluation because there was no mention of any juvenile records. Shaun filed a notice of appeal from the order to redact the reports.

*November 17, 2010, Temporary Custody Order*

A minute order entered on November 17, 2010, notes that the family court temporarily ordered the parties to comply with Dugan's custody evaluation, scheduled the matter for a custody hearing, and re-referred Shaun and Tiffany to the STEP program. The minute order also indicated that the prior DVPA restraining order should be dissolved and directed Tiffany's counsel to prepare a formal order. That same day, a written order was filed to dissolve the DVPA restraining order.

Three weeks later, Shaun filed a notice of appeal specifying an order dated November 17, 2010.

## DISCUSSION

## I

### *References to Shaun's Juvenile Records*

Shaun argues that the reliance on his juvenile records by Sloper, Moore, and Dugan in their reports was "unlawful." He further contends the family court erred in considering these reports. And, he argues that the family court was compelled to order the destruction of the reports. Shaun asserts that the very existence of these reports, even in redacted form, "forced" him to abandon the scheduled custody hearing "in order to avoid being yet further prejudiced by yet further disclosure and distribution of the Juvenile Records." We reject the contentions.

### A.

### *Appealability of an Order to Redact Confidential Documents in a Contested Custody Proceeding*

■ The right to appeal in a civil case is conferred exclusively by statute. (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 109 [40 Cal.Rptr.2d 839, 893 P.2d 1160].) In the absence of a statute authorizing an appeal, we lack jurisdiction to review a case even by consent, waiver, or estoppel. (*In re Marriage of Lafkas* (2007) 153 Cal.App.4th 1429, 1434 [64 Cal.Rptr.3d 100].) Thus, we must consider whether a statutory provision authorizes Shaun's appeal from the trial court's order to redact the challenged reports.

The primary statute addressing the appealability of judgments and orders in civil cases is Code of Civil Procedure section 904.1. (*Samuel v. Stevedoring Services* (1994) 24 Cal.App.4th 414, 417 [29 Cal.Rptr.2d 420].) Section 904.1 serves to avoid piecemeal litigation by limiting appeals to final judgments, postjudgment orders, and certain enumerated orders. (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696–697 [107 Cal.Rptr.2d 149, 23 P.3d 43].)

The order redacting the reports is not a final judgment in this marital dissolution action. And, Code of Civil Procedure section 904.1 does not list orders concerning redaction of confidential family court documents among those specifically made appealable. (See Code Civ. Proc., § 904.1, subd. (a)(2)–(12).) Even so, we conclude that the order is appealable as a collateral order.

 On the subject of collateral orders, this court has previously explained that "[o]ne exception to the 'one final judgment' rule codified in Code of Civil Procedure section 904.1 is the so-called collateral order doctrine. Where the trial court's ruling on a collateral issue 'is substantially the same as a final judgment in an independent proceeding' (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368 [134 Cal.Rptr. 197, 556 P.2d 297]), in that it leaves the court no further action to take on 'a matter which . . . is severable from the general subject of the litigation' (*In re Marriage of Van Sickle* (1977) 68 Cal.App.3d 728, 735 [137 Cal.Rptr. 568]), an appeal will lie from that collateral order even though other matters in the case remain to be determined. (*Day v. Papadakis* (1991) 231 Cal.App.3d 503, 508 [282 Cal.Rptr. 548].) . . . [¶] In determining whether an order is collateral, 'the test is whether an order is "important and essential to the correct determination of the main issue." If the order is "a necessary step to that end," it is not collateral. [Citations.]' (*Steen v. Fremont Cemetery Corp.* [(1992)] 9 Cal.App.4th 1221, 1227 [11 Cal.Rptr.2d 780].)" (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 561 [101 Cal.Rptr.2d 86].)

 Orders allowing or disallowing access to confidential court records have regularly been held appealable. (See, e.g., *Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 75–77 [70 Cal.Rptr.3d 88] [order to unseal confidential documents attached to pleadings in shareholder derivative suit held appealable]; *In re Marriage of Burkle* (2006) 135 Cal.App.4th 1045, 1051, fn. 6 [37 Cal.Rptr.3d 805] [order denying sealing of pleadings in dissolution case held to be an appealable collateral order]; *In re Providian Credit Card Cases* (2002) 96 Cal.App.4th 292, 297, fn. 2 [116 Cal.Rptr.2d 833] (*Providian*) [holding that an order to unseal documents filed under seal by defendants was "appealable as the final determination of a collateral matter in that it directs the performance of an act—i.e., unsealing—against defendants"]; *In re Marriage of Lechowick* (1998) 65 Cal.App.4th 1406, 1410–1411 [77 Cal.Rptr.2d 395] [order denying an application to unseal court records in a dissolution proceeding held appealable].)

In this case, the family court did not order the sealing or unsealing of any documents—noting instead that the reports challenged by Shaun were to be kept in the court's confidential folder as they had been all along. Nonetheless, the court did order that the reports be redacted to delete any reference to Shaun's juvenile records. As in *Providian*, the family court's order is appealable because it directs the performance of an act—namely redaction of the reports—that is final and not subject to further resolution in future proceedings. (*Providian, supra,* 96 Cal.App.4th at p. 297, fn. 2.) Thus, we conclude the order is appealable as a collateral order. (*Lester v. Lennane, supra,* 84 Cal.App.4th at p. 561.)

## B.

*References to Shaun's Juvenile Records in This Contested Custody Proceeding*

Shaun contends "the release of the juvenile records" to the authors of the confidential reports in this case was "unlawful." In support, he cites Welfare and Institutions Code sections 781 and 827[4] to argue that "[j]uvenile court records may not be disclosed or disseminated except by order of the juvenile court." We are not persuaded.

■ Section 781 sets forth the procedure by which a minor's juvenile court record may be sealed.[5] In citing this section, Shaun contends that "once a juvenile record is sealed, as [his] had been in this case, they are to be [*sic*] 'shall be deemed never to have occurred.' " Shaun fails to mention that the Sloper, Moore, and Dugan reports were all completed *before* his petition to seal his juvenile records was granted by the San Mateo County Superior Court. Only "[o]nce the court has ordered the person's records sealed" does section 781 provide that "the proceedings in the case shall be deemed never

---

[4] Undesignated statutory references are to the Welfare and Institutions Code.

[5] In pertinent part, subdivision (a) of section 781 provides: "In any case in which a petition has been filed with a juvenile court to commence proceedings to adjudge a person a ward of the court, . . . or in any case in which a minor is taken before any officer of a law enforcement agency, the person or the county probation officer may, five years or more after the jurisdiction of the juvenile court has terminated as to the person, . . . or, in any case, at any time after the person has reached the age of 18 years, petition the court for sealing of the records, including records of arrest, relating to the person's case, in the custody of the juvenile court and probation officer and any other agencies, including law enforcement agencies, and public officials as the petitioner alleges, in his or her petition, to have custody of the records. The court shall notify the district attorney of the county and the county probation officer, if he or she is not the petitioner, and the district attorney or probation officer or any of their deputies or any other person having relevant evidence may testify at the hearing on the petition. If, after hearing, the court finds that since the termination of jurisdiction or action pursuant to Section 626, as the case may be, he or she has not been convicted of a felony or of any misdemeanor involving moral turpitude and that rehabilitation has been attained to the satisfaction of the court, it shall order all records, papers, and exhibits in the person's case in the custody of the juvenile court sealed, including the juvenile court record, minute book entries, and entries on dockets, and any other records relating to the case in the custody of the other agencies and officials as are named in the order. . . . *Once the court has ordered the person's records sealed, the proceedings in the case shall be deemed never to have occurred,* and the person may properly reply accordingly to any inquiry about the events, the records of which are ordered sealed. The court shall send a copy of the order to each agency and official named therein, directing the agency to seal its records and stating the date thereafter to destroy the sealed records. Each such agency and official shall seal the records in its custody as directed by the order, shall advise the court of its compliance, and thereupon shall seal the copy of the court's order for sealing of records that it, he, or she received." (Italics added.)

to have occurred." Consequently, Shaun's reliance on section 781 is misplaced because he complains about references to his juvenile records that were made prior to the juvenile court's order.

■ Section 827 provides that a juvenile's case file is confidential and may only be inspected by people specifically enumerated in the statute.[6] (§ 827, subd. (a)(1); *In re Elijah S.* (2005) 125 Cal.App.4th 1532, 1541 [24 Cal.Rptr.3d 16].) Section 827 is inapposite because the authors of the challenged reports did not inspect documents contained in Shaun's juvenile records.

■ We have carefully examined the Sloper, Moore, and Dugan reports. Our review of the reports revealed that the authors of the challenged reports did not secure or view the files in Shaun's juvenile court records. The Sloper report summarized CLETS entries. The Moore report included a summary of marijuana use reported by Shaun. The Dugan report did not refer to Shaun's juvenile records, but only noted that Dugan reviewed the reports of Sloper and Moore. Shaun's assumption that Sloper, Moore, and Dugan delved into his juvenile records is not supported by the record and renders section 827 inapplicable.

---

[6] In pertinent part, subdivision (a)(1) of section 827 provides: "Except as provided in Section 828, a case file may be inspected only by the following: [¶] (A) Court personnel. [¶] (B) The district attorney, a city attorney, or city prosecutor authorized to prosecute criminal or juvenile cases under state law. [¶] (C) The minor who is the subject of the proceeding. [¶] (D) The minor's parents or guardian. [¶] (E) The attorneys for the parties, judges, referees, other hearing officers, probation officers, and law enforcement officers who are actively participating in criminal or juvenile proceedings involving the minor. [¶] (F) The county counsel, city attorney, or any other attorney representing the petitioning agency in a dependency action. [¶] (G) The superintendent or designee of the school district where the minor is enrolled or attending school. [¶] (H) Members of the child protective agencies as defined in Section 11165.9 of the Penal Code. [¶] (I) The State Department of Social Services, to carry out its duties . . . . [¶] (J) Authorized legal staff or special investigators who are peace officers who are employed by, or who are authorized representatives of, the State Department of Social Services, as necessary to the performance of their duties . . . . [¶] (K) Members of children's multidisciplinary teams, persons, or agencies providing treatment or supervision of the minor. [¶] (L) A judge, commissioner, or other hearing officer assigned to a family law case with issues concerning custody or visitation, or both, involving the minor, and the following persons, if actively participating in the family law case: a family court mediator assigned to a case involving the minor pursuant to Article 1 (commencing with Section 3160) of Chapter 11 of Part 2 of Division 8 of the Family Code, a court-appointed evaluator or a person conducting a court-connected child custody evaluation, investigation, or assessment pursuant to Section 3111 or 3118 of the Family Code, and counsel appointed for the minor in the family law case pursuant to Section 3150 of the Family Code. . . . [¶] (M) A court-appointed investigator who is actively participating in a guardianship case involving a minor . . . . [¶] (N) A local child support agency for the purpose of establishing paternity and establishing and enforcing child support orders. [¶] (O) Juvenile justice commissions . . . . [¶] (P) Any other person who may be designated by court order of the judge of the juvenile court upon filing a petition."

## C.

### *Whether Shaun Was Prejudiced by the Reports' References to His Juvenile Records*

Shaun contends his fundamental right to parent was undermined by the reports' references to his juvenile records. We disagree.

Although the challenged reports were unflattering to Shaun, the mere reference to CLETS entries or conduct stemming from his youth did not form the basis for the authors' recommendations regarding custody. Instead, the reports focused on Shaun's and Tiffany's inability to communicate effectively and strived to make recommendations that would allow them to coparent their son.

The Sloper mediation report focused on the goal of shared custody and less acrimony between the parties. The report noted that the "issues presented by the parents are complex" given that Shaun is "frustrated" with the custody proceedings and Tiffany "presents as credible, yet meek." The mediation report noted that Shaun dwelled on unsubstantiated allegations that Tiffany committed child abuse, was addicted to drugs, and caused him to lose his job due to her "death threats." With the goal of securing "mutual agreements regarding a parenting plan for their son," Sloper made recommendations for joint legal and physical custody that were premised on better communication and reduced antagonism between Shaun and Tiffany. These recommendations were not premised on Shaun's juvenile records.

Moore's substance abuse evaluation recommended "that [Shaun] practice complete abstinence from alcohol, non alcoholic substitute beverages, illicit drugs and medical marijuana." As Moore's evaluation noted, Shaun *self-reported* a long history of drug abuse: consumption of alcohol starting at age 14 or 15, marijuana use starting at age 13 when he began "hanging out with a 'bad crowd,' " and use of methamphetamines. Given Shaun's self-reported history of drug use and his own goal of avoiding the alcoholism that his father suffered, Moore's recommendations of abstinence from drugs and alcohol would have been the same regardless of Shaun's behavior as a juvenile.

Dugan's custody evaluation did not mention Shaun's juvenile records. Instead, the evaluation focused on the conflict between Shaun and Tiffany "regarding the structure of the parenting plan" for their son. In submitting to the evaluation, Shaun and Tiffany "understood that the best interests of children guided the present investigation, and provided written consent and understanding that this focus may result in their particular requests not being

supported by the results of this evaluation." The custody evaluation sought to address "highly acrimonious, high parental conflict and litigation patterns."

Ultimately, the recommendation for joint custody was based on the best interests of the parties' son, who wanted to spend more time with his mother. As Dugan explained, the parties' son "clearly needs and wants time with his mother, and his sense of emotional attachment with her is such that increasing parenting time between [son] and Tiffany is clearly warranted to meet this need. [¶] In spite of the previous pattern of child maltreatment allegations, I found no evidence supporting Shaun's concern that Tiffany has engaged in abusive or neglectful behaviors with [son]. [¶] . . . [¶] . . . [N]o evidence was presented in this evaluation in support of the severity or chronicity of Shaun's allegations regarding Tiffany's suspected substance abuse problems, inclu[d-ing] a comprehensive substance abuse evaluation presented by Colleen Moore, MFT."

In short, Dugan's custody evaluation focused on the difficulties arising from conflict between the parties. The evaluation recommended joint custody based on the best interests of the parties' child, not based on any consideration of behavior by Shaun before he became an adult.

Shaun was not prejudiced by the family court's consideration of the reports because the reports' conclusions and recommendations were not affected by his juvenile records. Instead, the concerns raised in the reports stem from problems with the dysfunctional relationship between Shaun and Tiffany. These concerns reflect the focus of any contested custody proceeding in which a child's best interest lies in spending time with both parents.

### D.

### Whether the Reports in This Case Must Be Destroyed

Next, Shaun argues that the family court, which is the forum for the contested custody proceeding, had no power to refuse the juvenile court's order to destroy his juvenile records. Referring to what is now California Rules of Court, rule 5.552(a)(5), Shaun asserts that the order to destroy his juvenile records extended to all "transcripts, records, or reports relating to matters prepared or released by the court, probation department, or child welfare program." (Italics omitted.) Essentially, Shaun argues that any report or evaluation that mentions his juvenile records must be destroyed. Not so.

The Sloper, Moore, and Dugan reports only referred to but were not themselves records within the "case file" that section 827, subdivision (a)(1), makes confidential. Stated another way, the reports in this case were not

juvenile records. Instead, the reports were family court documents produced in and for the contested custody proceedings involving Shaun and Tiffany's son. As the family court in this case expressly noted, the reports themselves were confidential. Although the family court ordered the reports redacted in harmony with the juvenile court's order, section 827 did not compel the destruction of the reports.

In sum, we conclude that the family court in this case was not obligated to order the records destroyed and did not err in ordering that the challenged reports be redacted to delete references to Shaun's juvenile records.

## II

### *Temporary Custody Order*

Shaun contends the family court's temporary custody order should be vacated because Tiffany failed to show a change in circumstances warranting a modification of custody. However, it is well settled that temporary custody orders are nonappealable. Consequently, we dismiss Shaun's appeal from the temporary custody order entered on November 17, 2010.

### A.

### *Appeal of the November 17, 2010, Order*

On November 17, 2010, the family court entered two separate orders: (1) a minute order that directed, among other things, that "temporar[y]" child custody/visitation follow the recommendations in the Dugan custody evaluation, and (2) a written order that states, in its entirety, "IT IS ORDERED that the CLETS Domestic Violence Restraining Order previously issued, which was set to expire on 11/15/2010 shall dissolve today 11/17/10."

Three weeks later, Shaun filed a notice of appeal from a "judgment or order in this case" identified only by its filing date of November 17, 2010.

### B.

### *Temporary Custody Orders Are Nonappealable*

Here, the notice of appeal must refer to the minute order that includes a temporary custody determination because the formal order dissolving the DVPA restraining order does not mention custody at all. An examination of

the minute order compels us to conclude that it is nonappealable as a temporary child custody order.

 ■ "[T]he lack of any statute giving a litigant the right to appeal from a temporary custody order forecloses the claim that such orders are appealable." (*Lester v. Lennane, supra*, 84 Cal.App.4th at p. 558.) As we explained, "A temporary custody order is interlocutory by definition, since it is made pendente lite with the intent that it will be superseded by an award of custody after trial. (Fam. Code, §§ 3022, 3040, 3060–3062.) Code of Civil Procedure section 904.1 bars appeal from interlocutory judgments or orders 'other than as provided in paragraphs (8), (9), and (11). . . .' (Code Civ. Proc., § 904.1, subd. (a)(1)(A).) Temporary custody orders are not listed in any of those paragraphs. Therefore this statute precludes the appealability of such orders. [¶] This result is in accord with the general rule that, under the 'one final judgment' rule, appeal lies only from final judgments in actions or proceedings, or from orders after judgment that affect the judgment or its enforcement; it does not lie from interlocutory judgments or orders unless specifically made appealable by statute. [Citations.]" (*Id.* at pp. 559–561, fn. omitted.)

 Shaun argues that the temporary restraining order is an appealable post-judgment order within the meaning of subdivision (a)(2) of Code of Civil Procedure section 904.1. We reject the argument. There has been no final custody determination in this case, and the temporary custody order expressly noted that the issue was slated for trial. Shaun's attempt to cast the DVPA restraining order as a prior final judgment is without merit. "There are important policy reasons why domestic violence orders should not be treated as the functional equivalent of final judicial custody determinations. Domestic violence orders often must issue quickly and in highly charged situations. The focus understandably is on protection and prevention, particularly where the evidence concerning prior domestic abuse centers on the relationship between current or former spouses. Treating domestic violence orders as de facto final custody determinations would unnecessarily escalate the issues at stake, ignore essential factors (such as the children's best interest) and impose added costs and delays. It also may heighten the temptation to misuse domestic violence orders for tactical reasons." (*Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047, 1056 [96 Cal.Rptr.3d 298].)

 Shaun next argues that there are other facets of the minute order that render it appealable, namely the direction to pay fees to Tiffany and the dissolution of the DVPA restraining order. An order directing a father to pay mother's attorney fees in a contested custody proceeding is appealable. (*Banning v. Newdow* (2004) 119 Cal.App.4th 438, 444 [14 Cal.Rptr.3d 447].) So too, the dissolution of an injunction (such as a restraining order) is an appealable

order. (Code Civ. Proc., § 904.1, subd. (a)(6) [authorizing appeal from "an order granting or dissolving an injunction, or refusing to grant or dissolve an injunction"]; see *Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1502, fn. 9 [95 Cal.Rptr.3d 343].)

■ However, the minute order entered on November 17, 2010, is not appealable in any event because it directed Tiffany's attorney "to prepare a formal order." As this court has previously held, "where a formal order is required, a minute order is not appealable." (*Banning v. Newdow, supra,* 119 Cal.App.4th at p. 458.) Consequently, the November 17, 2010, minute order is not appealable even if it directed the payment of attorney fees and dissolved a restraining order in addition to making a temporary child custody determination. (*Ibid.*) Accordingly, we dismiss Shaun's appeal from that minute order.

## DISPOSITION

The order entered on November 10, 2010 (redacting references to juvenile records in the reports), is affirmed. The appeal from the temporary custody order entered on November 17, 2010, is dismissed. Respondent Tiffany Smith shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

Raye, P. J., and Robie, J., concurred.