Filed 5/28/21; Modified and Certified for Pub. 6/3/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| In re the Marriage of F.M. and M.M. | |
|---|---|
| F.M.,  Appellant,  v.  M.M.,  Respondent. | A160669  (Alameda County  Super. Ct. No. HF18918839) |

F.M. (mother) appeals the trial court's denial of her application for a domestic violence restraining order (DVRO) against her former husband M.M. (father).[1] Mother alleges that the trial court erroneously refused to consider evidence of abuse committed following the filing of her application, failed to properly evaluate the evidence of domestic violence that the court did agree to hear, and improperly found that physical separation alone could

---

[1] Father did not file a respondent's brief, so we "may decide the appeal on the record, the opening brief, and any oral argument by the appellant." (Cal. Rules of Court, rule 8.220(a)(2).) "Nonetheless, [mother] still bears the 'affirmative burden to show error whether or not the respondent's brief has been filed,' and we 'examine the record and reverse only if prejudicial error is found.'" (*Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1078.)

substitute for the legal protections afforded by a restraining order.  We agree the court erred in all of these respects, and reverse.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  *Dissolution Proceedings Are Filed*

Mother and father married in June 2002.  The parties are originally from Nigeria.  In August 2018, mother filed a petition for dissolution of the parties' marriage, listing June 7, 2017, as the date of separation.  At the time of filing, the parties resided together with their six children, who were between the ages of 3 and 13.  Throughout the marriage, mother was a stay-at-home parent and the primary caregiver for the children.

In December 2018, mother filed a request for child and spousal support.  In her moving papers, she stated that father had abused her throughout their marriage.  Over the next six months, the dissolution proceeded without resolution through a series of status conferences.  During this time mother, father, and their children continued to reside together.

### B.  *Mother's DVRO Request*

On August 15, 2019, mother filed in pro. per. a DVRO application seeking protection from father for herself and their children under the Domestic Violence Prevention Act (Fam. Code,[2] § 6200 et seq.; DVPA).  She requested orders forbidding father from committing abuse, compelling him to stay away and to move out of their shared residence, and to be restrained from travelling with their children.  In support of her request, she claimed that on four occasions during the previous two months father had called her vulgar names in front of their children, seized her cell phone, demanded that she leave the house, thrown her belongings outside, and tried to strike her

---

[2] All statutory references are to the Family Code unless otherwise indicated.

2

with his hands. She also stated that father had made multiple threats to kill her. According to mother's declaration, she had suffered no physical injury from these incidents but had been beaten by father in the past. She also alleged that father had moved their eldest daughter to another location without her permission.

The trial court granted mother's application, in part, and issued a temporary restraining order (TRO). Father was ordered not to abuse mother and to stay at least five yards away from her. The court denied mother's other requests pending a September 2019 hearing, including her requests to add the children as protected parties, to require father to move out of their shared residence, and to prevent father from traveling with the children. In denying these requests, the court explained that mother had not described the alleged abuse in sufficient detail and had failed to provide a legal basis for a move-out order. The court also noted that parenting orders would be issued after the parties met with family court services.

Before the scheduled hearing, father filed a response to mother's DVRO application. He stated that he was financially supporting the family without any contribution from mother. He reported that mother was verbally abusive towards him and the children, and that she would threaten to call the police whenever he asked her for help in paying household expenses. According to father, their oldest daughter was so upset at mother's treatment of her that she had asked to move out. He denied committing any acts of violence, claiming that when mother harassed him he would not respond and would try to avoid her.

## C. DVRO Hearings

The DVRO matter was heard over several days in the latter part of 2019. Before the first hearing, mother and father met with a child custody

counselor who recommended that mother be given sole legal and physical custody of the parties' children. The counselor's report noted that mother and father had argued during the entire meeting and were unable to make good use of mediation. The report also detailed father's unilateral decision to send their eldest daughter to live in Elk Grove with the mother of his other child. Mother said she had not seen her daughter for almost a month and that father would not disclose their daughter's exact location. The counselor opined that father's decision to relocate the child was "peculiar" and "unusually controlling."

### 1. September 2019 DVRO Hearing

At the September 5, 2019 hearing, the trial court adopted the child custody counselor's recommendations. Regarding mother's DVRO application, the court stated, "[C]learly, you two do not need to be living together. I think that's the big issue." The court continued, "[T]he problem is you are living together, and if you were just living in separate households, you wouldn't be encountering each other— [¶] . . . [¶] . . . and there wouldn't be problems." Mother responded that she was looking for an apartment and would move out as soon as she found one. The court replied that it wanted to set a date certain for mother's move-out, saying the court was "not as much concerned with this request for this restraining order because I think the allegations you've made in this request have to do with the fact that the two of you are living together." Mother said she would move out by the end of the month.

The trial court asked mother whether she thought a restraining order would still be necessary once the parties had separate residences. Mother expressed concern about father being around her and the children because "[h]is behavior, it's not good." As an example, mother said that father calls

4

her a "motherfucker bitch" in the presence of the children. The court decided to continue the hearing for two months to allow the parties' oldest daughter to be interviewed by the family court counselor since both parents had alleged the other was manipulating the child. Mother was directed to present a court order to the Elk Grove police to obtain a standby and retrieve the child. Even though father had not filed a request for a DVRO, the court ordered mother to move out of the parties' home by the end of the month. The court granted mother's request to reissue the TRO. Father was denied visitation.

In October 2019, mother attended her scheduled custody counselor meeting, but father missed his own appointment. The counselor's report noted that mother had moved out of the family home and was temporarily living in a motel. She also described a recent incident in which father had pushed her when she returned to their former shared residence to collect some of her personal belongings. Mother called the police, who arrested and jailed father. Additionally, mother had attempted to retrieve their eldest daughter but was unsuccessful because her court paperwork lacked the trial court's signature and stamp. The report also noted that the parties' second eldest daughter was refusing to relocate with mother.

### 2. *November 2019 DVRO Hearing*

On November 6, 2019, the court held the second hearing on mother's DVRO request. When asked by the court about the October incident, father admitted he had been arrested and jailed but denied having pushed mother and said that no criminal charges were filed against him. Mother responded that father had beaten her, leaving a bruise on her hand, and that she intended to press charges. The court again continued the hearing and

5

encouraged mother to contact the district attorney's office no later than November 15, 2019. The TRO was reissued.

As the hearing was concluding, father mentioned that his arrest occurred after mother came to his home without a police standby in order to pick up clothes for the children and to try to take their second eldest daughter from the home. The trial court asked mother if she had gone to father's home by herself. When she said she had, the court admonished her: "[T]hat doesn't show very good judgment on your part. [¶] You had this restraining order; you say you're afraid of him. I don't know under what circumstances it would be a good idea for you to do that. [¶] . . . [¶] . . . I'm just saying that when we ultimately have a hearing on this request for a domestic violence restraining order, that's a factor I'm going to look at, because when someone is truly in fear of another person, they don't go to their house." Mother explained that father had told her she could come, but the court replied: "No, ma'am, you do not go to his house. If there's something that you need to do there, you need to have a civil standby. That does not show good judgment."

Ahead of the final hearing, mother filed a declaration asking the trial court to order father to move out of their former shared residence so she could return with their children. She explained that she had not found an apartment and was living out of her car with the children.[3]

### 3. December 2019 DVRO Hearing

At the December 16, 2019 hearing, the trial court began by asking mother to put forth evidence in support of her DVRO request. Mother responded: "Now, he's threatening— [¶] . . . [¶] . . . [h]e's going to kill me,

---

[3] There is nothing in the record indicating that the trial court addressed this request.

because I went to our joint account and we have joint $23,000, and I took $3,000 from it, and he's telling everybody he's going to kill me, and I'm so scared of my life." The court refused to consider this evidence because the incident had occurred the previous Friday, stating: "You need to support this request with what took place *before* you filed this request. What happened Friday *is not relevant* to this request." (Italics added.)

Mother then explained that father was refusing to give her their children. The trial court also rejected this evidence because it related to the parenting order, not domestic violence. The court then asked her, "You are living separately and apart, correct? [¶] . . . [¶] . . . So, you don't have the conflict with living with each other. [¶] . . . [¶] . . . So what is the basis for your continued request for the restraining order?" Mother responded by referring to threats father had made in November and December 2019. The court cut her off, repeating that she could not rely on events that occurred after she filed her DVRO request.

Mother then explained that in August 2019 father would beat her and call her "bitch" and "motherfucker" in front of the children. She said the abuse started in 2017, when father went to Nigeria "to get married to a new wife." Father told her he did not want her and threatened to kill her if she did not leave their house. When mother referred to the incident leading to father's recent arrest, the court interrupted and said that the arrest came after mother filed her request for the restraining order. The court asked father for his response, cutting him off as well when he began relating events that happened after August 2019. Father then denied that he had abused mother and accused her of repeatedly coming to his house and causing him distress.

The trial court asked mother if she had any additional evidence, and she replied she wanted her daughters back because they were not doing well in school and because father was a "party man." The court interrupted her again, telling her that the issue was irrelevant to the DVRO request. Mother then said her additional evidence was "[j]ust the beating he has been giving me." She also said that she had tried to press criminal charges against father but had not yet received a response from the authorities.

## D. Trial Court Findings and Ruling

The trial court summarized its findings at the close of the December 2019 hearing:

"THE COURT: Well, you haven't provided any corroborating evidence to me that that, in fact, took place. All I have is your say so if that's what happened, and I have [father]'s testimony that that didn't happen. You have the burden of proof, not him; you do.

"[MOTHER]: Yes.

"THE COURT: And I just don't find that there's sufficient evidence to grant this domestic violence restraining order. I think the two of you need a lot of help with your parenting issues though, a lot of help."

When father interjected that he was staying away from mother but that she kept coming back to him, the court reiterated:

"THE COURT: Sir, as I said, there's no question that the two of you need to stay away from each other.

"[FATHER]: Yes, your Honor.

"THE COURT: That doesn't mean that there needs to be domestic violence restraining orders.

"[FATHER]: Right.

"THE COURT: You definitely need to stay away from each other."

Following a brief discussion of child custody issues, the trial court denied mother's DVRO request after finding that mother had not met her burden of proof to establish that a restraining order was necessary. The court explained: "[Mother] provided no corroborating evidence for her statements as to what took place in the past. [¶] The court finds they are too general in nature and lack [the] specificity required to support the request." This appeal followed.

## II. DISCUSSION

On appeal, mother argues that the trial court erred in denying her request for a restraining order because the court refused to hear her testimony regarding acts of domestic violence that father committed against her after she filed her DVRO application and obtained the TRO. She also faults the court for failing to properly credit and consider the evidence it did agree to consider, and for misapplying the law by determining that physical separation alone could substitute for the legal protections afforded by the DVPA.

### A. *General Principles*

As relevant here, the DVPA defines domestic violence as abuse of a spouse or the child of a party. (§ 6211, subds. (a) & (e).) "Abuse" includes intentionally or recklessly causing or attempting to cause bodily injury, placing a person in reasonable apprehension of imminent serious bodily injury, or engaging in behavior that could be enjoined under section 6320. (§ 6203.) Section 6320 includes "molesting, attacking, striking, stalking, threatening, sexually assaulting, [and] battering . . . harassing, telephoning, . . . contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party." (§ 6320, subd. (a).)

9

Under the DVPA, a court may issue a protective order " 'to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved' upon 'reasonable proof of a past act or acts of abuse.' " (*Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 782.) The statute should "be broadly construed in order to accomplish [its] purpose" of preventing acts of domestic violence. (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1498.)

We review the trial court's grant or denial of a DVPA restraining order request for an abuse of discretion. (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 226 (*Davila*).) We likewise review a trial court's failure to consider evidence in issuing a DVRO for an abuse of discretion. (See *Nevarez v. Tonna*, *supra*, 227 Cal.App.4th at p. 785.) " 'To the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review.' " (*In re Marriage of G.* (2017) 11 Cal.App.5th 773, 780.)

"Judicial discretion to grant or deny an application for a protective order is not unfettered. The scope of discretion always resides in the particular law being applied by the court, i.e., in the ' "legal principles governing the subject of [the] action . . . ." ' " (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 337.) Thus, "we consider whether the trial court's exercise of discretion is consistent with the statute's intended purpose." (*People v. Rodriguez* (2016) 1 Cal.5th 676, 685.) " 'If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law. [Citation.] Therefore, a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to

10

reversal. [Citation.]' [Citation.] The question of whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law [citation] requiring de novo review [citation]." (*Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1463.)

## B. *The Trial Court's Refusal to Consider Evidence of Postfiling Abuse Was Prejudicial Error*

During the December 2019 hearing, the trial court repeatedly refused to consider evidence regarding alleged acts of domestic violence committed by father after mother filed her DVRO request, deeming such evidence irrelevant to whether a permanent restraining order should issue. Mother contends this was error, asserting that "[n]othing in the plain language of the DVPA restricts courts when ruling on a DVRO request to hearing evidence of abuse that occurred only before the request was filed." We agree.

"The DVPA requires a showing of past abuse by a preponderance of the evidence." (*Davila*, *supra*, 29 Cal.App.5th at p. 226.) Section 6300 subdivision (a) provides, in part: "An order may be issued under this part to restrain any person . . . if an affidavit or testimony and any additional information provided to the court . . . shows, to the satisfaction of the court, *reasonable proof of a past act or acts of abuse*." (Italics added.) Mother correctly observes that the DVPA does not "provide that the 'past act or acts of abuse' must have occurred only before the petitioner filed the request, or that a court is barred from considering any abuse occurring thereafter."

While a trial court should, of course, hear and evaluate the evidence relating to incidents set forth in a petitioner's request, evidence of postfiling abuse is also relevant, particularly when that abuse occurs after a temporary restraining order has been issued, as was the case here. The purpose of a domestic violence restraining order is not to punish past conduct, but to "prevent acts of domestic violence [and] abuse" from occurring in the future.

11

(§ 6220.) Evidence of recent abuse or violation of a TRO is plainly relevant to whether a petitioner should be granted a protective order. Evidence Code section 210 defines "relevant evidence," in part, as "evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." Evidence Code section 351 provides: "Except as otherwise provided by statute, all relevant evidence is admissible."

Postfiling abusive conduct is clearly relevant in cases in which a TRO has been granted pending a hearing on a permanent restraining order. As noted above, section 6320 allows a court to enjoin, among other things, attacking, striking, threatening, harassing, contacting directly or indirectly, or disturbing the peace of the protected party. (§ 6320, subd. (a).) Section 6203, subdivision (a)(4) specifically provides that engaging in behavior that "has been . . . enjoined pursuant to Section 6320" constitutes abuse for purposes of the DVPA. (See *N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 602–603 [violation of TRO was itself an act of abuse].) The probative value of postfiling evidence is even more apparent in cases such as this one where the trial court's final ruling was delayed by several months.

In this case, the August 2019 TRO forbade father from attacking or threatening mother, disturbing mother's peace, or contacting her directly or indirectly apart from "peaceful contact" required for visitation with the children. Mother offered admissible evidence that father violated these prohibitions after she obtained the TRO. For example, she testified that father threatened to kill her a few days before the December 2019 hearing after he learned that she had withdrawn $3,000 from their joint bank account. She also testified about an altercation in October 2019 at father's home in which she was physically attacked by him, resulting in his arrest.

12

The trial court's categorical refusal to consider postfiling evidence of father's alleged abuse and violation of the TRO, based solely on the ground that the conduct had occurred after mother filed her DVRO application, was legal error and therefore constituted an abuse of the court's discretion. The court's evidentiary cut-off violated the DVPA's mandate that a court "shall" consider the "totality of the circumstances" in determining whether to issue a restraining order. (§ 6301, subd. (c) ["The court shall consider the totality of the circumstances in determining whether to grant or deny a petition for relief."]; see also § 6340, subd. (a)(1) [the court "shall consider whether failure to make any of these orders may jeopardize the safety of the petitioner and the children for whom the custody or visitation orders are sought"].)

The error was prejudicial. To establish prejudice, an appellant must demonstrate that there was a " ' "reasonable probability that in the absence of . . . error, a result more favorable to the appealing party would have been reached." ' " (*County of Los Angeles v. Williamsburg National Ins. Co.* (2015) 235 Cal.App.4th 944, 955.) If mother's testimony regarding father's postfiling conduct had been credited, the evidence could have established abuse sufficient to support the issuance of a DVRO under the proper legal standard. (See § 6203, subd. (a).)[4] Accordingly, we reverse the order denying mother's request for a DVRO and remand this matter to the trial court for a new hearing to be conducted consistent with this opinion. We address mother's remaining arguments to provide further guidance on remand.

---

[4] It also appears that the trial court selectively applied this blanket rejection of evidence. While the court refused to consider evidence of father's postfiling conduct, it considered mother's own postfiling conduct when it declared that mother had not exhibited "good judgment" by retrieving her personal belongings from father's home without a civil standby, and indicated it would use that as a "factor" against her DVRO petition.

## C. *Sufficiency of Mother's Evidence of Prefiling Abuse*

In denying mother's DVRO request, the court found her testimony lacked specificity and corroboration. According to the court, mother "need[ed] to tell [the court] specific dates." The court also faulted her for failing to provide corroborating evidence: "Well, you haven't provided any corroborating evidence to me that [domestic violence], in fact, took place. All I have is your say so if that's what happened, and I have [father]'s testimony that that didn't happen. You have the burden of proof, not him; you do. [¶] . . . [¶] . . . And I just don't find that there's sufficient evidence to grant this domestic violence restraining order." The court concluded that mother "provided no corroborating evidence for her statements as to what took place in the past. [¶] The Court finds they are too general in nature and lack [the] specificity required to support the request."

We agree with mother that the DVPA does not impose a heightened standard for specificity, nor does it contain any corroboration requirement. Instead, it provides that a court may issue a DVRO "if an affidavit or testimony and any additional information provided to the court . . . shows, to the satisfaction of the court, *reasonable proof* of a past act or acts of abuse." (§ 6300, subd. (a), italics added.) The DVPA also expressly provides that a court may issue a restraining order "based *solely* on the affidavit or testimony of the person requesting the restraining order." (§ 6300, subd. (a), italics added.)

Our review of the evidence does not reveal a fatal lack of specificity in mother's evidence. Mother's request for a restraining order documented specific acts of domestic violence and described father's ongoing abusive behavior. For example, she alleged that father had threatened her life and had specifically threatened to kill her if she called the police for help. He had

14

allegedly called her father in Nigeria and made the same threats. She alleged that father repeatedly called her a "motherfucker," "bitch," and "prostitute" in front of their children. In her DVRO request, mother referenced four specific dates on which these incidents occurred, and she also testified that these kinds of acts occurred with regularity. Mother also alleged that father had beaten her and hit her with his hands, and had taken her phone away from her. Threats on a person's life, demeaning a person in front of their children with vulgar and degrading language, physically beating a person, and seeking to exercise control over a person by taking away their phone, are all actionable forms of abuse under the DVPA. (See §§ 6203, 6320, subds. (a) & (c).)

Of course, "[a] trier of fact is free to disbelieve a witness . . . if there is any rational ground for doing so." (*In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1043.) Here, the trial court did not indicate on the record that mother lacked credibility as a witness, and indeed, the court must have credited her testimony because it issued and reissued the TRO several times. Instead, the court found mother failed to meet her burden of proof because she did not offer corroborating evidence. In many domestic violence cases, however, the sole evidence of abuse will be the survivor's own testimony which, standing alone, can be sufficient to establish a fact: "The testimony of one witness, even that of a party, may constitute substantial evidence." (*In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 703.) On remand, the trial court is directed to weigh this evidence without a corroboration or heightened specificity requirement.

## D. *Physical Separation Is Not a Substitute for the Protections of a Restraining Order*

Mother correctly argues that the trial court erred insofar as it relied on the fact that she no longer lives with father as a basis for denying her

15

DVRO request. Section 6301, subdivision (b) expressly provides, in relevant part: "The right to petition for relief shall not be denied because the petitioner has vacated the household to avoid abuse . . . ." As mother states: "In light of the recognized seriousness of domestic abuse, domestic violence survivors must not be denied critical protection under the DVPA merely [because] they have succeeded in extracting themselves from the immediate risks posed by living with their abuser."

Here, the trial court repeatedly stated on the record that mother's protection from abuse could be accomplished simply by having her and the parties' six children move out of the house. For example, at the September 2019 hearing, the court stated that it was "not as much concerned" about the allegations that father had threatened to kill mother and had verbally abused her in front of their children, because those behaviors were, in the court's view, simply a function of them living together. At the same time, the court repeatedly stated that the parties needed to stay away from each other, which the court presumably believed they could do without a court order in place. This was error. (*See Cueto v. Dozier* (2015) 241 Cal.App.4th 550, 562 ["These comments [warning the respondent to stay away from the petitioner after denying her petition] suggest that the trial court believed there was a need to admonish [the respondent] from the bench that he must continue to stay away [from] and have no contact with [the petitioner], but without giving [the petitioner] the legal protection of a restraining order."].)

The trial court's use of residential separation as a substitute for a DVRO was inappropriate given that the parties still have to coparent. Because the parties have six children together, further interactions between the two are unavoidable. The record shows that even with separate residences, continuing interaction between the parties has resulted in

16

ongoing conflict.  On remand, the trial court may not deny mother's petition for a restraining order on the basis that she no longer lives in the same residence with father.[5]

### III.  DISPOSITION

We reverse the trial court's order and remand the matter for a new hearing on mother's DVRO request consistent with the views expressed in this opinion.  Because respondent did not appear on appeal, neither party shall recover costs.  (Cal. Rules of Court, rule 8.278(a)(5).)

---

[5] Mother additionally contends on appeal that the trial court erred when it concluded that parenting order issues are "not really relevant" to the issue of the restraining order.  We need not resolve whether the trial court committed error in this instance.  We observe, however, that if the evidence establishes that father has cut off access to their eldest daughter in violation of the court's order granting mother sole legal and physical custody, that may constitute abuse.  Section 6320, subdivision (c) explains that " 'disturbing the peace of the other party' " within the meaning of section 6320, subdivision (a) "refers to conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party."  Depriving a parent of access to his or her child certainly may qualify as abuse under this definition.

SANCHEZ, J.


WE CONCUR:


HUMES, P. J.


MARGULIES, J.


A160669
*In re Marriage of F.M. and M.M.*

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| In re the Marriage of F.M. and M.M. | |
|---|---|
| F.M., | A160669 |
| Appellant, | (Alameda County |
| v. | Super. Ct. No. HF18918839) |
| M.M., | ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION |
| Respondent. | |
| | [NO CHANGE IN JUDGMENT] |

The opinion in the above-entitled matter filed on May 28, 2021, was not certified for publication in the Official Reports. After the court's review of a request under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published in the Official Reports.

It is further ordered that the opinion filed herein on May 28, 2021, be modified as follows:

1. Footnote 1 on page 1 is removed and replaced with the following footnote:

> [1]After issuing a tentative opinion in this matter, we received notice that respondent had died. Despite this development, we have exercised our discretion to resolve this matter and order publication of the opinion in light of the

important public matters raised in this appeal.  "On issues of great public interest, we have the inherent discretion to resolve the matter despite events which may render the matter moot." (*Konig v. Fair Employment & Housing Com.* (2002) 28 Cal.4th 743, 745, fn. 3.)  Although respondent did not file a brief in this appeal, appellant "still bears the 'affirmative burden to show error whether or not the respondent's brief has been filed,' and we 'examine the record and reverse only if prejudicial error is found.' " (*Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1078.)

The modification does not change the appellate judgment.  (Cal. Rules of Court, rule 8.264(c)(2).)

Dated:

_____

Humes, P.J.

2

Trial Court:        Alameda County Superior Court

Trial Judge:        Nikki Clark, Commissioner

Counsel:

Family Violence Appellate Project, Arati Vasan, Cory Hernandez, Jennafer D. Wagner, Erin C. Smith; Jones Day and Craig E. Stewart for Plaintiff and Appellant.

No appearance for Respondent.