Filed 3/9/21  Guardianship of Soto CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| Guardianship of the Person and Estate of JACOB MATTHEW SOTO, a Minor. | C078801 |
| RONALD B. BASS, | (Super. Ct. No. PR71726) |
| Plaintiff and Appellant, | |
| v. | |
| JACOB MATTHEW SOTO, | |
| Objector and Respondent. | |
| SAN JOAQUIN PUBLIC GUARDIAN, | |
| Objector and Respondent. | |

This appeal involves a claim of $5,109.75 in attorney fees for services rendered to two guardians.  Objector-respondent Jacob Matthew Soto (the minor) was an adult at the time the fee request was made, but was a minor at the time the services were rendered for

1

his guardians, his grandmother, Ellen Soto (Ellen), and Ellen's daughter, his aunt, Diana Soto (Diana). Appellant, attorney for the guardians, filed in the trial court a petition pursuant to Probate Code section 2642[1] for compensation for services rendered to the guardians. Although the trial court had granted appellant's three prior requests for compensation, the court denied the petition in its entirety, concluding that it would be unfair for the minor's estate to be required to pay for further services, and that, while the "fee request may be appropriate, . . . it should be paid by Ellen Soto and Diana Soto," who, the court concluded, also obtained personal benefits from the services rendered by appellant. Thereafter, the trial court denied appellant's motion for a new trial, but ordered that $6,000 be retained to pay appellant's fees in the event he prevailed on appeal in this matter.

On this appeal from the trial court's denial of his request for fees, appellant asserts that, pursuant to section 2642, the trial court was not authorized to weigh the detriment to the parties or to shift responsibility for paying his fees. Instead, under the mandatory language of section 2642, the trial court was required to determine if appellant's legal services were rendered "to the guardian or conservator of the person or estate or both," and what compensation was reasonable for those services. Upon making those determinations, section 2642 mandated that "[t]he compensation so allowed shall thereupon be charged against the estate." (§ 2642, subd. (b).)

We partially agree with appellant as discussed *post*. We remand the matter to the trial court for a new hearing and determination of whether the fees last requested by appellant were (1) for services rendered in the best interest of the minor, and (2) reasonable pursuant to section 2642.

---

[1] Further undesignated statutory references are to the Probate Code in effect at the time of the proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND[2]
### Early Guardianship Proceedings

The minor was born on March 23, 1996. He was raised by his mother and by Ellen and her husband, the minor's grandfather, Jose Soto (Jose). The minor's father was not involved in the minor's upbringing. In June 2001, the minor's mother died as a result of alleged medical malpractice. A guardianship was created to collect and administer the proceeds of mother's life insurance policy which named the minor as beneficiary. On or about July 23, 2001, Ellen and Jose applied to become guardians and temporary guardians of the person and estate of the minor. The court granted the petition for temporary guardianship on July 27, 2001, and granted the petition for guardianship on September 4, 2001. The court ordered that all proceeds from the life insurance policy were to be deposited into a blocked bank account. Later in 2001, the guardians, considering a wrongful death action on behalf of the minor against his mother's medical providers, contacted appellant.

In June 2002, Ellen and Jose substituted appellant as their attorney in the guardianship matter. The wrongful death action settled in April 2004 for $250,000. The minor was to receive $96,667 in cash, and the remainder was to be paid through a structured settlement. The total payable under the settlement amounted to $409,111.40.

On or about August 6, 2004, Ellen was arrested for killing Jose, leaving the minor in Diana's care. Upon a petition by Diana, the court appointed an attorney to represent the minor's interests.

The sources of money on which the minor and Ellen had subsisted diminished. The court ordered two disbursements from the minor's blocked account to provide for necessities. Thereafter, Diana received proceeds from a life insurance policy on Jose.

---

[2] The factual and procedural background is largely derived from appellant's petition and supporting papers.

3

However, Ellen, wanting a private attorney to represent her in the prosecution against her for the killing of Jose, decided to sell the family home unless another source of funds was found to pay an attorney. Diana suggested that the minor purchase an interest in the family home in an amount not to exceed $45,000. This solution was intended to benefit the minor, as it would permit him to retain some stability in the family home, in his school, and in his surroundings. This way, Ellen would receive funds for her defense, and the minor would be able to stay in the house and would acquire an appreciating interest in the property. The trial court allowed the minor to fund a deed of trust at six percent interest. A deed of trust in the amount of $40,975, naming the minor beneficiary was executed on January 26, 2005, and recorded on February 1, 2005.

### Third Account

In December 2005, Diana was appointed guardian of the person and estate of the minor. Pursuant to direction from the court, Diana filed a first, second, and third account. In one of the accounts, Diana noted that, following Jose's death, the minor might have a one-sixth interest in the family home.

Among the issues addressed by Diana in the third accounting were the following:

(1) Whether the minor and Diana should continue living in the family home, or if the family home should be sold.

Diana noted that the minor was happy with his surroundings and was thriving. She also noted the extraordinary disruptions he had endured in his short lifetime, and opined that it would be counterproductive for the minor to be forced to move from his home, neighborhood, school, and friends. Diana also noted that, financially, selling the family home would not be advantageous because the family could not afford to buy a new home, and the amount spent each month on the mortgage was substantially less than the fair rental value of the family home. Additionally, selling the family home would require a probate proceeding to resolve title issues relating to the minor's potential one-sixth interest in the home. Diana also noted that, while she had been subsidizing the

4

expenses through life insurance proceeds, soon her funds would be exhausted. While this was not the minor's problem from a legal perspective, Diana was the only remaining family the minor had caring for him, and therefore it would be in his best interests for Diana to continue living with him and caring for him. Based on these considerations, among others, as well as the belief that the home's value would continue to appreciate, Diana concluded that it was in the minor's best interests to remain in the family home.

(2) Whether the promissory note should be called.

Diana observed that calling the promissory note would necessitate the sale of the family home because Ellen had no other means to pay the note. Additionally, according to Diana, at six percent interest, the note was earning more than the minor could earn with those funds elsewhere. While Diana concluded that the note should not be called, she also concluded that it should not be formally extended. This approach would provide the minor and his estate with flexibility.

(3) Whether a wrongful death lawsuit should be filed against Ellen based on Jose's death.

Diana observed that, while the minor lived with Ellen and Jose, he was not economically dependent upon them. Therefore, any damages award for economic loss would be small. Also, noneconomic damages would be small because Jose did not provide much care for the minor, and, in addition, Jose had been angry and abusive to Ellen, Diana, and the minor. Moreover, because it did not appear as though any insurance policy was applicable to fund a damages award, the source for damages would likely be the family home. Diana elected against filing such a lawsuit, noting that, if the minor disagreed, he would still have time to file such an action upon reaching the age of majority.

(4) Whether a probate proceeding should be initiated.

Diana concluded that no probate proceeding was necessary because such a proceeding would only be worthwhile in the event that the family home was to be sold.

5

The trial court approved of the first, second, and third accounts. The court also approved appellant's requests for $2,500 in fees for work performed through August 2004, and $2,500 in fees for work performed through November 2006, as well as a request for reimbursement in the amount of $224.30 in costs.

## Fourth Report and Account

On November 10, 2011, appellant filed a fourth report and account and petition for its settlement and approval and for attorney fees and costs. By this time, Ellen had paroled, returned to the family home, and resumed caring for the minor. Diana left the family home and her guardianship authority was suspended. Ellen was appointed temporary guardian of the person of the minor, and a public guardian was appointed guardian of the estate. Based on these developments, it was deemed appropriate to revisit in the fourth account the issues discussed in the third account to determine whether the conclusions were still in the minor's best interests.

For the same reasons as before, it was concluded that the family home should not be sold. Calling the promissory note would be counterproductive because there was, based on declining real estate values, insufficient equity to pay the note in full, and ultimately the house would either be owned by the minor, who would have to fund deferred maintenance expenses, or purchased by a speculator, depriving the minor of a home. Instead, it was determined the better course would be to wait for home values to increase. For the same reasons as before, it was concluded that a wrongful death action should not be filed against Ellen and a probate proceeding should not be commenced. Accordingly, the fourth account concluded that the third account should not be modified.

Appellant also stated in the fourth account that he had pursued a petition for an upward modification in the minor's father's child support obligation. Ultimately, the court considering that motion increased the child support obligation from $215 to $807 per month.

6

As directed by the trial court, Child Protective Services investigated whether a petition should be filed regarding custody of the minor. A social worker concluded that Ellen was committed to the minor's best interests, and it was both safe and healthy for Ellen and the minor to remain together. The trial court appointed Ellen as guardian of the person of the minor. Additionally, the court directed Diana to file a final report and account. The court further directed appellant to prepare a report and account in the event that Diana failed to do so. Diana did not prepare the report and account, so appellant's office subpoenaed financial records and prepared the fourth report and account as directed by the court.

The fourth report and account covered the period from August 1, 2006, through October 7, 2010. Appellant detailed the work performed by him and his staff during this time period: work in connection with the first three reports; work in successfully obtaining upward modification in the minor's father's child support obligation; work in effectuating changes in guardianship and dealing with a financial emergency; and work on miscellaneous services including working out a loan modification for the family home. Appellant also detailed the computation of fees for all services rendered, which totaled $104,144.50. Appellant specified the ways in which the services performed were beneficial to the minor and his estate. Appellant then stated that, notwithstanding the fact that the services performed were valued at $104,144.50, he was only requesting $7,500. Appellant stated that he had charged the estate "exceedingly low fees." For example, in the second report, he sought $2,500 for services valued at $15,407.50, and in the third report, he sought $2,500 for services valued at $18,866.91. Appellant stated that the $7,500 he was seeking in connection with the fourth report and account represented a mere seven percent of the value of the services rendered. Appellant also requested $2,857.20 in itemized costs.

In an order filed March 15, 2012, the trial court awarded appellant $7,500 in attorney fees for work performed through the filing of the fourth report and account. It also awarded appellant $2,857.20 in costs.

In an order filed June 21, 2012, the trial court approved the fourth report and account, as amended by two declarations of an attorney from appellant's law firm. The trial court awarded Diana a sum for reimbursement of expenses paid, and discharged the bond she posted. The court also awarded Ellen a sum for reimbursement for expenses she paid.

### Appellant's Fee Request and the Public Guardian's Opposition

On March 10, 2014, the public guardian petitioned, ex parte, for an order, among other things, allowing the estate to reserve funds to cover costs and fees, including costs and fees to be sought by appellant, and ordering the distribution of the remainder to the minor following his 18th birthday on March 23, 2014.

On March 12, 2014, appellant filed a declaration seeking attorney fees. The fees were sought for the period between November 11, 2011, and March 4, 2014. According to appellant, these fees were incurred in connection with: the fourth report and account; addressing the minor's school grades; dealing with reimbursement for Ellen; addressing Ellen's needs with respect to caring for the minor; the public guardian's accounting; addressing the minor's interest in joining the Marines before turning 18; and the procedure for the release of funds to the minor when he turned 18. Appellant set forth his background and professional experience, as well as that of his associate, and their respective rates of pay.

Appellant then detailed the work for which he was seeking compensation. From November 11, 2011, through January 20, 2014, appellant and his employees worked further on the fourth report and account. After the report was filed, the public guardian requested that the attached schedules be resubmitted on Judicial Council forms. Appellant prepared the forms and reviewed the account. Appellant also addressed

8

concerns the public guardian had about the account and computed and reduced a credit Diana was to receive. Appellant also communicated with Diana about the changes. Appellant conducted legal research in anticipation of drafting a reply brief responsive to the public guardian's brief submitted in connection with the fourth report and account. Appellant's associate also spent substantial time on the fourth report and account, including conferring with Ellen. Appellant's associate also prepared for and appeared at several hearings. Appellant's associate prepared accounting schedules to be filed in connection with the fourth report and account and prepared a declaration in support of the account. She also prepared other declarations and orders. According to appellant, prior to discounting, the value of the itemized services performed in connection with the fourth account was $16,005. After discounting, appellant requested $11,380 for the work his firm performed in connection with the fourth report and account.

With regard to caring for the minor, appellant asserted that he and his associate spent time discussing with Diana, and subsequently Ellen, various matters relating to the care of the minor. These matters included obtaining insurance for the minor, home issues, and the minor's therapy. Appellant charged a total of $675 for these services.

Appellant separately itemized time spent addressing the minor's grades, including the need for tutoring and/or a continuation school and school absences. Appellant's associate also devoted time to this matter, discussing it with interested parties and addressing it in a hearing before the court. Appellant charged a total of $863.75 for this work.

Appellant charged $110 for work reviewing the public guardian's account.

Appellant charged $605 in connection with work performed reimbursing Ellen from the estate for expenses she paid out of pocket.

Appellant charged $1,071.25 for work performed in relation to the minor's interest in enlisting in the Marines before his 18th birthday. This work involved research and

9

communicating with a Marines representative and with individuals involved in the estate and guardianship.

Appellant charged $1,038.75 for work involved in preparing for the release of funds to the minor upon his reaching the age of majority.

Finally, appellant charged $1,870 for time spent preparing the petition for attorney fees.

Thus, for work performed during the period between November 11, 2011, and March 4, 2014, appellant charged a total of $17,613.75. However, he stated that he would further discount this amount by 20 percent and thus sought only $14,091. Appellant stated that, in total, he had discounted his services by more than $8,100, more than half of the amount he was seeking. Appellant stated that, in greatly discounting the amount charged, he was seeking to ensure that the minor would have sufficient funds throughout his minority. Appellant also believed that, after paying these fees, the minor would still have sufficient funds in reserve. Appellant also sought $122.75 in itemized costs.

On March 18, 2014, the trial court directed the public guardian to withdraw funds for the minor, but directed the public guardian to withhold $26,000 to cover requests for fees.

On August 4, 2014, appellant filed a further declaration, noting that an account filed by the public guardian indicated a balance on hand of $24,000, $2,000 less than the court ordered. Appellant requested that, if the court was compelled to discount fees because of this shortage, it not discount appellant's fees because they were already deeply discounted.

The public guardian filed a declaration on September 8, 2014, opposing the fees requested by appellant. The public guardian's position was that some of the work performed by appellant truly benefited the former guardians or resulted from the guardians' conduct. The public guardian discussed the services performed by appellant

10

and the reasons such services were required, maintaining that the former guardians should be required to pay for certain of appellant's services. The public guardian asserted that the salient issue was not whether the estate had the funds to pay appellant's fees, but instead who should bear the cost of appellant's services. The public guardian requested that the court consider apportioning fees so the minor's estate did not bear all of the expenses. But the public guardian cited no legal authority to support the request.

In reply, appellant requested that the objections be overruled. Appellant relied on section 2642, which provides, in pertinent part, that, upon the petition by an attorney for the payment of legal services and upon the hearing thereon, "the court shall make an order allowing such compensation as the court determines reasonable to the attorney for services rendered to the guardian or conservator. The compensation so allowed shall thereupon be charged against the estate." (§ 2642, subd. (b).) Appellant further asserted that refusing to pay an attorney for services performed in defending the court-ordered accounting on the ground that the guardians were culpable, notwithstanding that the attorney was not culpable, would be contrary to the intent of the law that an attorney be paid for services performed. Appellant emphasized that the court ordered him to prepare the accounting; "[t]hus, the Public Guardian is asking that the court deny payment to [appellant] for work that the court requested and that was properly prepared." Appellant noted that the court had the option of surcharging a guardian.

### The Trial Court's Order

In an order entered December 1, 2014, the trial court denied appellant's request for attorney fees. In doing so, the court did not indicate it had apportioned fees between the estate and the guardians as suggested by the public guardian. Instead the court stated, in pertinent part: "Attorney Bass has represented the prior Guardians for several years. The actions of those Guardians were on multiple occasions not in the best interest of the minor, and on some occasions, were actually adverse to the interests of the minor. That being said, an attorney is not normally responsible for the actions of the client. [¶] The

11

fees of attorney Bass were paid until the most recent request. In fact, fees were paid through the preparation of the Account referenced in the request [the fourth account]. However, after the Account was filed, corrections were needed. Some of the required changes were the responsibility of the attorney, others the obligation of the client. [¶] Ultimately, to require the estate to pick up more fees is inherently unfair to the minor (now an adult) who the Court is required to protect. *The fee request may be appropriate*, but it should be paid by Ellen Soto and Diana Soto, not from the estate. [¶] The request for attorneys' fees for [appellant] is denied as it relates to being paid by the Guardianship of the Estate of [the minor]." (Italics added.)

**Appellant's Motion for a New Trial and the Trial Court's Determination**

On December 19, 2014, appellant filed a motion for a new trial. Appellant asserted that the court's reasoning in denying his petition for fees did not apply to those services which were not performed in connection to the fourth account. While appellant's position concerning fees for the fourth account was somewhat unclear, it appears that he either abandoned his request for those fees, or acknowledged that he had been compensated for those services by the trial court's March 15, 2012, order granting him $7,500 in fees. As to those fees which were not for services in connection with the fourth account, appellant asserted that an award of reasonable attorney fees was mandatory pursuant to section 2642.[3] In his motion for new trial, appellant limited the services for which he sought attorney fees and costs to work related to: (1) the minor's care; (2) the minor's grades; (3) the estate's accounting; (4) the reimbursement of Ellen from the estate; (5) the minor's interest in the Marines; (6) the release of funds to the

_____

[3] Appellant initially, incorrectly, referred to section 2641, which pertains to compensation for guardians and conservators. Subsequent statutory references in appellant's papers were, correctly, to section 2642, which pertains to petitions for fees by attorneys.

12

minor upon his 18th birthday; and (7) preparation of the fee petition. According to appellant, after eliminating the amount sought in connection with the fourth account, the balance at issue was $5,109.75. Appellant pointed out that the court did not expressly address these fees and costs in its order. To the extent that the court's order was intended to address these matters, appellant asserted that the order was contrary to law and/or an abuse of discretion.

Appellant again emphasized the language of section 2642, subdivision (b), which provides that, "[u]pon the hearing, the court *shall* make an order allowing such compensation as the court determines reasonable to the attorney *for services rendered to the guardian* or conservator. The compensation so allowed shall thereupon be charged against the estate." (Italics added.) According to appellant, the appropriate inquiry under section 2642, is limited to: (1) whether the attorney rendered legal services to the guardian, and (2) what was the reasonable value of these services rendered. Appellant argues that upon resolving these questions, the court "shall" issue an order for reasonable compensation, and "shall" direct that amount be paid by the estate.

Noting that there was no dispute that he performed the services at issue, appellant asserted that the only remaining question was the reasonable value of the work. Appellant asserted that there was no evidence to support a finding that the value of the services performed was zero, and, therefore, the court's order, which did not issue any award for these services, was erroneous as a matter of law and an abuse of discretion. Thus, according to appellant, he was entitled to a new trial pursuant to Code of Civil Procedure section 657, subdivisions (1) and (6).[4]

---

[4] Civil Code of Procedure section 657 provides in pertinent part: "The verdict may be vacated and any other decision may be modified or vacated, in whole or in part, and a new or further trial granted on all or part of the issues, on the application of the party aggrieved, for any of the following causes, materially affecting the substantial rights of such party: [¶] 1. Irregularity in the proceedings of the court, jury or adverse party, or

13

On February 10, 2015, the trial court heard argument on appellant's motion. Appellant reiterated that he was seeking only $5,109.75, and was not seeking fees requested in connection with the fourth account. Appellant was only seeking "fees for the other work we did on behalf of the guardian under . . . Section 2642, Subsection B." Appellant noted that the fees had been discounted "multiple times," and that the amount sought was "only approximately 15 percent of the fees expended with respect to just this work, but in the case in its entirety, over the last several years we've -- the value of our services is over $170,000 and we've received 12,500 for our services." According to appellant, his firm had "discounted our fees greatly because of -- because of the situation . . . ."

Counsel for the public guardian stated she would rely on her prior written objections which had been made in the declaration summarized *ante*. The public guardian believed her client lacked standing to comment because the Probate Code terminated guardianship upon the minor reaching the age of majority. The minor had turned 18 on March 23, 2014.

The public defender, acting as counsel for the minor, asserted that the motion for a new trial purportedly did not satisfy the statutory requirements by advancing new facts. Minor's counsel also emphasized that actions undertaken by appellant were as helpful or more helpful to the prior guardians than to the minor, and that "it keeps coming out of my client's funds and that keeps being the argument that he has plenty of funds so let's bring it out of his funds."

Specifically addressing the claim advanced by the public defender that the work performed in connection with the deed of trust and mortgage was more beneficial to the guardians than the minor, appellant maintained that the minor enjoyed the benefits of

---

any order of the court or abuse of discretion by which either party was prevented from having a fair trial. [¶] . . . [¶] 6. Insufficiency of the evidence to justify the verdict or other decision, or the verdict or other decision is against law."

14

having a deed of trust against the home, and appellant "worked to modify the mortgage because it was about to go into foreclosure . . . . So that was the basis for our negotiations with [the bank], to try and renegotiate that mortgage and prevent it from going into foreclosure so the minor didn't lose $40,000 of interest in the home, kept the minor and the guardian in the home so they had a place to live." This also enabled the minor to remain in his home with fewer changes.

The trial court ruled on the motion as follows:

"It seems like there's two conflicting issues, if you will, that kind of permeate this case. One is once the Court approved this $40,000 loan -- which was clearly for the benefit of grandmother only and the only benefit to the minor was this trickle down theory that if it was good for grandmother that it was also good for the minor, which I don't know that I ever really bought into. But the problem was once the Court approved it, there's always this tendency to look back and say, You know, that was a mistake, and I think in hindsight, clearly it was a mistake. Problem is we don't get to do the hindsight game of saying it was a mistake and you don't get to penalize somebody else because the Court made a decision that panned out to be a very poor one, in my view, at least for the benefit of the minor. And so you can't now use that as kind of a sword against the grandmother and the aunt to kind of beat them up with it and say, This didn't work out well so we're going to undo what the Court approved and work from that basis. I don't think we get to do that.

"The flip side is, it just seems like there's this -- not ignorance but glossing over of the fact that again somehow that they both had a place to stay and that there wasn't significant [*sic*] benefit to the grandmother and aunt out of that. Instead we keep looking at it -- or at least the grandmother and the aunt keep looking at it -- as if . . . the benefit to the minor was so great that it overrode all of the detriment of the minor. I mean, when we say they both got to stay there -- well, right, and without that, Grandma had nowhere to go. Looks to me like when Grandma was out of the picture, Aunt had nowhere else to

15

go.  So they got some significant benefit out of what occurred, not to mention the problem later of this issue with the place being foreclosed on.  They couldn't hold up their obligation to keep that paid and in place.

"Anyway, I just see those two things as kind of clashing and I'm not able to come to a good conclusion of how to resolve that.  I will indicate, however, that I did this decision and order byway [*sic*] of what I call a minute order decision rather than a more lengthy decision, but I did include even -- though not all of the issues are addressed in the decision, I did include them all in coming to my conclusion, which wasn't an easy or simple conclusion.

"I don't take lightly the work that was done by the attorneys for the guardian, and having been in private practice before I took the bench, I know what it's like to discount your work and not get paid even at the discounted rate.  But *in weighing that all out at some point, it just seemed like the detriment to the minor won out over the detriment to the guardian and to their attorney.*  I've been thinking about whether I should take it under submission one more time and take a look at it, just see if there's anything else that sways my thought, but I did review the motion when it first came in even though I no longer had the probate assignment and in looking at it I concluded that those questions raised and issues raised I had taken into account in the original decision and even though they weren't addressed individually in that decision, they were considered.  So I don't see that changing.  (Italics added.)

"So at this point I'm going to deny the request for reconsideration."

After the court made its ruling, appellant again pointed out that the work performed outside of the fourth account had not been addressed by the court.  Appellant further asserted that, pursuant to section 2642, he was entitled to reasonable fees for the work performed, which were to be paid by the estate, not by a guardian.  Appellant again emphasized the value of the work performed and the discounted amount sought, and asserted "we've only asked for about 15 percent of the work we've actually done and

16

we're doing that now as well.  We did do the work.  We did work for the benefit of the minor."

The court responded:

"You're asking me to reconsider the reconsideration, I understand that, and I allowed it and it's now all on the record -- it looks like there's going to be an appeal.  I understand all of that, but what you're bringing up is the same thing I looked at to start with.  *My purpose in making the comment about the fees not being unreasonable is I* didn't want the decision to be misread should the attorney seek to do that to collect from either the grandmother or the aunt, that somehow the Court had determined that those fees were inappropriate for anybody to pay them.  *I wanted to make clear that I wasn't arriving at that conclusion* and that's why I stayed [*sic*] in that fashion.  *I wasn't trying to indicate I think on the basis of the guardian those fees are reasonable*.  I'm just going to blow those off and grant them anyway.  It wasn't that kind of decision and I didn't want it to be misread by the grandmother or the aunt.  So that was my reason for putting that in there."  (Italics added.)

The trial court directed that $6,000 which belonged to the minor but which had been held in reserve pending a determination of appellant's request for fees be retained pending appeal in this matter.

## DISCUSSION

### I.  Appellant's Contentions[5]

Appellant asserts that the trial court erred when it failed to determine the reasonable value of the services he rendered as attorney for the guardians and to make an

---

[5] No party filed a respondent's brief in this case.  Where no respondent's brief has been filed, we "decide the appeal on the record, the opening brief, and any oral argument by the appellant." (Cal. Rules of Court, rule 8.220(a)(2), (c).)  "As a result, we may accept as true the facts stated in [appellant's] opening brief.  [Citations.]  Nonetheless, [appellant] still bears the 'affirmative burden to show error whether or not the

17

award of those reasonable attorney fees.  Appellant contends that the trial court was required under section 2642 to make an order allowing for reasonable compensation and must charge that reasonable compensation against the estate.  According to appellant, the trial court had no authority to forego issuing such an order and instead conclude that, if reasonable attorney fees were appropriate, those fees should be paid by Ellen and Diana.  Appellant argues that the statutory scheme related to attorney fees does not call for a balancing of the hardships, but for the mandatory payment by the estate to counsel of reasonable attorney fees for work performed.  Appellant also asserts that no provision in the Probate Code calls for reduction or elimination of fees to be paid because guardians, in addition to the minor's estate, received ancillary benefits from the attorney's services.

## II.  Applicable Legal Principles

Attorney fees for services performed for a guardian or conservator "must *always* be first approved by the court after a noticed hearing." (*Conservatorship of Estate of Bower* (2016) 247 Cal.App.4th 495, 509.)  Section 2640, subdivision (c) provides: "Upon the hearing, *the court shall make an order allowing . . . any compensation requested in the petition the court determines is reasonable* to the attorney for services rendered to the guardian or conservator of the person or estate or both." (Italics added.)  Section 2642, subdivision (a) provides in pertinent part:  "At any time permitted by Section 2640 and upon the notice therein prescribed, an attorney *who has rendered legal services to the guardian* or conservator of the person or estate or both . . . may petition the court for an order fixing and allowing compensation for such services rendered to that time." (Italics added.)  Subdivision (b) of section 2642 provides:  "Upon the hearing, the court *shall make an order allowing such compensation as the court determines*

_____

respondent's brief has been filed,' and we 'examine the record and reverse only if prejudicial error is found.' " (*Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1077-1078.)

*reasonable to the attorney for services rendered to the guardian . . . .* The compensation so allowed shall thereupon be charged against the estate." (Italics added.)

The California Rules of Court specify what must be included in the petition for attorney fees. (Cal. Rules of Court, rule 7.702.)**6** The petition must comply with the requirements of rule 7.702, except when the petition is made in connection with a guardianship or conservatorship, in which case, "the best interest of the ward or conservatee is to be considered instead of the interest of beneficiaries of the estate." (Rule 7.751(b).)**7**

Discussing section 2642, subdivision (b), and Rule 7.751(b), and citing *Conservatorship of Lefkowitz* (1996) 50 Cal.App.4th 1310 (*Lefkowitz*), one treatise states in connection with attorney fees for services rendered to conservators: "The attorney must establish that the fees were incurred for actions taken that were in the best interests

---

**6** Further undesignated rule references are to the California Rules of Court in effect at the time of the proceedings. Rule 7.702 provides that a petition for extraordinary compensation in a probate proceeding must include or be accompanied by a statement of facts upon which the petition is based, which must: "(1) Show the nature and difficulty of the tasks performed; [¶] (2) Show the results achieved; [¶] (3) Show the benefit of the services to the estate; [¶] (4) Specify the amount requested for each category of service performed; [¶] (5) State the hourly rate of each person who performed services and the hours spent by each of them; [¶] (6) Describe the services rendered in sufficient detail to demonstrate the productivity of the time spent; and [¶] (7) State the estimated amount of statutory compensation to be paid by the estate, if the petition is not part of a final account or report." (Rule 7.702; see also Rule 7.750 [application of rules to guardianships and conservatorships].)

**7** Rule 7.751(b) pertains to the required showing in a petition for allowance of compensation and provides in full: "All petitions for orders fixing and allowing compensation must comply with the requirements of rule 7.702 concerning petitions for extraordinary compensation in decedents' estates, to the extent applicable to guardianships and conservatorships, except that the best interest of the ward or conservatee is to be considered instead of the interest of beneficiaries of the estate."

of the conservatee and reasonable." (Gold et al., Cal. Civ. Prac. Probate & Trust Proceedings (Nov. 2020) § 28:180.)

We review a trial court's decision concerning attorney fees under the abuse of discretion standard. (*Estate of Trynin* (1989) 49 Cal.3d 868, 880 (*Trynin*); *Estate of Beach* (1975) 15 Cal.3d 623, 645.)

### III. Analysis

Here, the public guardian did not ask that all the fees requested be borne by the guardians exclusively. Nor did the public guardian claim any of the services were valueless. The public guardian requested that the court "determine what fees are appropriately paid by [the minor], and what fees should be born by the former guardians." In doing so, the public guardian did not cite legal authority supporting the request. Nor did the trial court cite a statute, rule, case law, or other authority to support its reasoning and decision not to award any fees. Nevertheless, implied in the public guardian's request and the trial court's ruling is the concern that at least some of the services for which appellant sought compensation may not have been in the best interest of the minor.

In *Lefkowitz*, the court held that a conservatee's estate was not required to pay attorney fees for services provided the conservator in opposing removal because the conservator did not establish both that (1) the decision to oppose removal was motivated by a good faith belief that it was in the best interests of the conservatee, and (2) any such belief was objectively reasonable. (*Lefkowitz*, *supra*, 50 Cal.App.4th at pp. 1313-1316.) Underlying this reasoning is the requirement to consider the best interest of the conservatee. Thus, counsel must establish that the fees were incurred for actions taken in the best interest of the conservatee. (Gold, *supra*, at § 28:180.) We discern no principled difference between a conservatorship and guardianship on this point. Indeed, as noted, under the Rules, a petition for extraordinary compensation must include or be accompanied by a statement of facts upon which the petition is based, which must,

20

among other things, consider the best interest of the ward. (Rules 7.702 [statement of facts supporting petition for extraordinary compensation must include, among other things, "the benefit of the services to the estate"], 7.751(b) [in applying rule 7.702 to guardianships, "the best interest of the ward or conservatee is to be considered instead of the interest of beneficiaries of the estate"].)

We conclude that section 2642, rules 7.702 and 7.551(b), and the reasoning in *Lefkowitz* mandates that the court, upon holding a hearing on contested matters, make an order awarding what it determines to be reasonable attorney fees for services rendered to the guardian when those services are in the best interest of the ward. Thus, we only partially agree with appellant's assertion that, in reviewing a petition for attorney fees pursuant to section 2642, the court is required to: (1) determine whether services were performed for the guardian or conservator; (2) determine the reasonable value of the services rendered; and (3) issue an order compensating the attorney for the reasonable value of the services rendered which is to be charged against the estate. (§ 2642.) To this, we add to the first element listed by appellant that the court must determine whether services were performed for the guardian *and that those services were in the best interest of the ward*.

Here, there does not appear to be any dispute that the services at issue were performed or that they had value. Nor did the court conclude that none of the services were in the ward's best interests, although the court expressed the opinion that some of the services provided *greater* benefit to the guardians. The court expressly concluded in its December 1, 2014, order: "Ultimately, to require the estate to pick up more fees is inherently unfair to the minor (now an adult) who the Court is required to protect. The fee request *may be appropriate*, but it should be paid by Ellen Soto and Diana Soto, not from the estate." (Italics added.) The trial court reiterated this conclusion in denying appellant's motion for a new trial, stating, "it just seemed like the detriment to the minor won out over the detriment to the guardian and to their attorney." While this rationale

21

indicates the court considered the minor's best interest, it is not clear whether the court concluded that *none* of the fees for services to the guardians were in the minor's best interest.

The trial court's order does not explain why each of the services listed in the amended attorney fee request made in connection with the new trial motion were not in the minor's best interest and instead benefited the guardians. In the absence of such an explanation and a determination of whether each of the amounts sought were reasonable, we must conclude the trial court abused its discretion in denying attorney fees for these services.[8]

Finally, appellant asserts he is entitled to an award of attorney fees as compensation for the expense of having to pursue this appeal. Appellant was correct in noting in the trial court that the law required him to prepare the fee petition including a statement of facts upon which the petition is based. (Rule 7.702.) Additionally, our high court has held that extraordinary services compensable under former section 910, which provided for payment of extraordinary services in probate proceedings,[9] "include work

---

[8] Appellant also asserts that, to the extent the trial court determined that the amounts previously awarded to him constituted adequate compensation for all services performed in connection with this matter, including those at issue here, this was an abuse of discretion in light of the fact that all prior amounts billed and paid had been drastically discounted. However, there is no reason on this record to conclude that the trial court made its ruling based on a determination that prior payments to appellant were sufficient to compensate him for all work performed. Nothing the court stated in its orders indicates any such determination was made. Consequently, we need not further address this argument.

[9] At the time of our high court's decision in *Trynin*, former section 910 read: "Attorneys for executors and administrators shall be allowed out of the estate, as fees for conducting the ordinary probate proceedings, the same amounts as are allowed by the previous article as commissions to executors and administrators; and such further amount as the court may deem just and reasonable for extraordinary services. [¶] Extraordinary services which the attorney may apply to the court for compensation include those services by any

reasonably performed by the attorney to establish and defend the fee claim." (*Trynin*, *supra*, 49 Cal.3d at p. 880.) However, our high court proceeded to state in *Trynin*: "This does not mean, however, that an additional award of fees for fee-related services is invariably required. Where the trial court reasonably concludes that the amounts previously awarded the attorney for both ordinary and extraordinary services are adequate, given the value of the estate and the nature of its assets, to fully compensate the attorney for all services, including fee-related services, denial of a request for fee-related fees would not be an abuse of discretion." (*Ibid.*) A determination on any request for fee-related services incurred in pursuing this appeal will be properly before the trial court upon remand. (*Ibid.*)

Based on the foregoing, we remand the matter to the trial court for a new hearing and determination of appellant's fee petition related to each of the services comprising the $5,109.75 he last requested, consistent with the views expressed in this opinion.


* * * * *


---

paralegal performing the extraordinary services under the direction and supervision of an attorney. The petition or application for compensation shall set forth the hours spent and services performed by the paralegal."

# DISPOSITION

The trial court's order dated December 1, 2014, is reversed and the matter is remanded for a new hearing and determination on appellant's petition for $5,109.75 in attorney fees, at which the court shall determine which fees were for services that were in the best interests of the minor and follow the mandates of section 2642 in accordance with the views expressed in this opinion.  Appellant is awarded his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


/s/
_____
MURRAY, Acting P. J.

We concur:


/s/
_____
HOCH, J.


/s/
_____
RENNER, J.