Filed 7/17/24  Moran v. Palacios CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| MICHAEL MORAN,<br><br>        Appellant,<br><br>    v.<br><br>VICTORIA PALACIOS,<br><br>        Respondent. | B321062<br><br>(Los Angeles County<br>Super. Ct. No. PD052806) |

APPEAL from an order of the Superior Court of Los Angeles County, Robert E. Sanchez DuFour, Judge. Affirmed.

Michael Moran, in pro. per., for Appellant.

No appearance by Respondent.

———————————————

# INTRODUCTION

Michael Moran (Father) appeals from a postjudgment custody order modifying a previous custody order regarding his daughter, Jessica. The order from which Father appeals granted Victoria Palacios (Mother) sole physical custody of Jessica and sole legal custody for the purpose of making decisions regarding Jessica's medical and mental health needs. Father has not met his burden of demonstrating the family law court erred, and we affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

Jessica was born in 2007. In 2011, Father filed for dissolution of his marriage with Mother. The parties then engaged in an extended custody dispute, in which the family law court observed that "the Parties have been in conflict since the birth of the Minor Child, and have demonstrated a complete inability to co-parent or co-exist."

In the 2014 judgment of dissolution, Father was awarded sole physical and legal custody of Jessica with visitation for Mother. Throughout her elementary school years, Jessica lived with Father during the school week and visited with Mother on weekends and certain holidays. Mother and Father each sought modification of the custody order after the 2014 judgment at various times. In 2017, Mother sought joint physical and legal custody of Jessica. In 2018, Father requested permission to move to Oregon. In 2019, Mother again sought modification of the custody orders, seeking sole physical custody of Jessica. The family court granted Mother temporary physical custody in 2020 and made this order permanent in 2022. These orders are the subject of this appeal.

A.    *December 2020 Hearing*

On December 15, 2020, the court (Judge Joshua Wayser) conducted an evidentiary hearing regarding Mother's request for modification of the custody order for Jessica, who was then 13 years old and in middle school.  A court-appointed interviewer testified regarding her conversations with Jessica and a social worker from the Los Angeles County Department of Children and Family Services (Department).

Jessica told the interviewer she no longer wanted to live with Father due to his angry outbursts.  Once, Father pulled her hair, yelled at her, and pushed her against the wall.  According to Jessica, Father sometimes threw her phone into the neighbor's yard, threw her clothes on the roof of their home, locked her things in his car, and used scissors to destroy her clothing when he was angry with her.  She informed the interviewer, "when he gets mad, he throws stuff or he kicks the wall, and he throws containers of food at me or water bottles."  Jessica stated she cried and felt scared when he acted like this.  When asked what Father did in response to her crying, Jessica responded, he would yell "'a lot more,'" demand she stop crying, and throw out more of her things.

Jessica recounted an incident when Father tried to take her phone, "grabbing both of [her] arms, and [she] ended up getting cuts and scratches on [her] hands from his nails."  In the previous two months, Jessica stated she called the police twice about Father, and Mother also called the police twice.

Jessica reported that Father disparaged her and Mother, questioned their intelligence, and referred to them using ugly epithets.  Jessica further related:  "'he will say stuff like, quote, your mom ruined my life, unquote.'"  Jessica stated that Father believed Mother was "crazy and will never care about [Jessica] like [he] do[es]."  Jessica declared at the end of the interview,

"'I'm not going back to my dad's house. I refuse to go back to my dad's house.'"

The interviewer also spoke with a social worker from the Department, who at the time was investigating a referral relating to Father's reported emotional abuse and general neglect. The social worker informed the interviewer that she spoke with Mother and Father at their respective homes. Father admitted to the social worker he took Jessica's shoes and clothes and threw her things on the roof. Father also admitted he slapped Jessica once. The social worker stated she believed Father's behavior towards Jessica was "immature" and "an inappropriate parenting style."

Father testified at the hearing that Jessica had only recently changed her mind about living with him. He suggested he had recordings of her saying she was glad she went with him. He believed Mother had been leading Jessica to mistrust him for years. He nevertheless admitted to the court he threw Jessica's phone in the neighbor's yard and threw her clothes on the roof. He told the court Jessica had said she would lie about him to get him to stop taking her things.

The court acknowledged the long history of the case, including that a child evaluator made adverse findings against Mother in 2013, which led to Father gaining custody of Jessica. The court noted the parents' long-standing animosity and the resulting "messy" record in which Mother and Father each accused the other of abuse.

The court temporarily granted Mother sole physical custody because Jessica needed time away from the conflict between the parents and from her conflict with Father. Legal custody remained joint. Father was granted visitation on Saturdays. The court further ordered the parties to return in six months for a

status hearing and for the court to consider further changes to the custody order.

B.    *May 2021 and September 2021 Hearings*

On May 18, 2021, the parties appeared before Judge Robert Sanchez DuFour for the scheduled status hearing.  Father explained his circumstances had changed since December so he was less stressed and better able to care for Jessica.  He was accepted to a master's degree program for landscape architecture and had found work.  Father contended Mother was keeping Jessica from visiting or speaking with him.

Mother's counsel confirmed there had been very little visitation with Father in the intervening five months due to Jessica's refusal to speak to or visit with Father.  Mother testified Jessica told her of suicidal ideation while she lived with Father but indicated Jessica did not feel the same after moving in with Mother.  Mother also reported Father obstructed her attempts to seek gynecological care and mental health services for Jessica.

The court appointed minor's counsel to represent Jessica's interests, and it ordered the parties to coordinate therapy for Jessica by providing the names of two psychologists or psychiatrists to minor's counsel.  The court also ordered Mother to encourage Jessica to visit with Father but did not otherwise change the existing visitation schedule.  During the court's ruling, Father began to call Mother names in open court and accused her of lying.  The court noted Father's outburst for the record and observed the court bailiff had to stand between Father and Mother.  Although Father did not leave his seat, he was pointing and yelling at Mother.

The parties appeared before Judge DuFour again on September 14, 2021.  Minor's counsel confirmed the dysfunction between the parents and explained the process of getting Jessica

5

into therapy was in the preliminary stages. Father again stated Mother was keeping Jessica from him. The court continued the hearing to January 25, 2022 to allow Jessica to begin therapy.

C.      *January 2022 Hearing*

On January 25, 2022, the parties again appeared before Judge DuFour for the evidentiary hearing. The court noted Mother and Father had both filed requests for orders to modify child custody and visitation, and Father had filed a request for an order for Jessica to attend therapy in the interim. The court indicated it would issue permanent custody and visitation orders after the hearing.

Minor's counsel advised the court that "for about eight months now we have been going around in circles trying to find a therapist for this child." On November 1, 2021, minor's counsel informed the parties by email that he had selected a therapist pursuant to the authority granted to him by the court. Although he had confirmed with the therapist that she would accept the case before sending the email to the parties, counsel later received an email the same day from the therapist indicating she was no longer comfortable working on the case. The therapist said: "I got two long voice mails from Michael Moran today stating that he does not want Jessica to work with me. He was very adamant about this for a multitude of reasons. He sounded very upset and agitated. I know I need the respect and cooperation of both parents to successfully treat a child."

Jessica's counsel described Father as "incessant" and agreed with Jessica's description that he was "intense." Counsel stated Jessica was "over this" and "fed up." She did not want to see Father or speak with him. For these reasons, minor's counsel believed it was in Jessica's best interest for Mother to receive sole legal custody for the purpose of selecting and implementing

6

therapy for Jessica. Minor's counsel additionally recommended permanent orders be issued without another evidentiary hearing to avoid further disturbing Jessica.

Father, under oath, explained to the court he opposed the therapist selected by minor's counsel because Jessica would attend sessions virtually, not in person. Father believed Mother would interfere with the therapy sessions, as she had in the past, and tell Jessica what to say. Father set out the reasons for his rejection of the therapists suggested by Mother or minor's counsel, including that they were not licensed and he could not afford them. Father believed he should have custody because Jessica had told him Mother gets angry more easily than he did. During cross-examination by Mother's counsel, Father admitted allegations of emotional abuse were substantiated against him by the Department.

Mother testified, also under oath, that Father refused to cooperate to get Jessica medical attention for an ovarian cyst and delayed her treatment by one month, telling Mother she should be seeing a natural health expert. Mother also testified Father would agree to pay for a therapist, leading Mother to gather the necessary information, but he ultimately would renege on the promise. Although the court had ordered the therapist's rate could not exceed $175 per hour, Father refused to pay more than $120 per hour. Father cross-examined Mother extensively about her claims against him, focusing on what documentary evidence Mother had to support her claims and her attempts to keep Jessica away from him. Father argued Mother did not care about Jessica's health because Mother cancelled Jessica's umbilical cord storage.

Relying on the findings made by Judge Wayser after the December 15, 2020 hearing, Father's conduct at the May 18, 2021 hearing, and the testimony described above, the court made the

following permanent custody order on April 13, 2022: (1) it granted Mother sole legal custody for the purpose of making decisions regarding Jessica's medical and mental health needs; (2) it ordered Jessica to be seen by a psychologist or licensed mental health professional at a cost of no more than $175 per session; (3) it granted joint legal custody for all other purposes; and (4) it granted Mother sole physical custody of Jessica.

Father timely appealed on April 29, 2022.[1]

## DISCUSSION

Father primarily challenges the sufficiency of the evidence supporting the court's custody ruling. He also contends the trial court denied him a full and fair opportunity to present his case at the January 25, 2022 evidentiary hearing. Mother, through counsel, advised this Court she would not file a respondent's brief. We decide the appeal based on the record, the opening brief, and any oral argument by Father. (Cal. Rules of Court, rule 8.220(a)(2); see *In re Marriage of Mathews* (2005) 133 Cal.App.4th 624, 626.) Although Mother did not present arguments supporting the challenged order, as the appellant

---

[1]     Father also appealed from Judge Wayser's December 16, 2020 minute order issued after the December 15 hearing. We dismiss the appeal from the December 16, 2020 minute order because this order is a nonappealable temporary custody order. (See *Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1090; see also *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 20 ["'When a party appeals from both appealable and nonappealable orders, courts in this state regularly dismiss the appeal from the latter order.'"].)

Father has the burden to demonstrate the court committed error and that such error prejudiced him.  (See *In re Marriage of Knox* (2022) 83 Cal.App.5th 15, 40; see also *Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963.)

A.    *The Law Governing Child Custody*

"Under California's statutory scheme governing child custody and visitation determinations, the overarching concern is the best interest of the child."  (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255 (*Montenegro*); Fam. Code, §§ 3011, 3040.)[2]  In determining the best interest of the child, section 3011 directs the court to consider "all relevant factors, including the child's health, safety, and welfare, any history of abuse by one parent against any child or the other parent, and the nature and amount of the child's contact with the parents."  (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 955-956; § 3011.)  The court must also consider and give due weight to the wishes of a child regarding custody and visitation when the child has reached a "sufficient age and capacity to reason so as to form an intelligent preference."  (§ 3042, subd. (a).)

Where, as here, the family court has entered a final custody order reflecting the best interest of the child, the court should preserve "'the established mode of custody unless some significant change in circumstances indicates that a different arrangement would be in the child's best interest.'"  (*Montenegro, supra,* 26 Cal.4th at p. 256.)  The party seeking the modification

---

[2]    All further section references are to the Family Code unless otherwise specified.

9

bears the burden to demonstrate the change in circumstances. (See *ibid.*)

We review a family court's custody and visitation orders, including modification orders, for abuse of discretion. (See *Montenegro, supra*, 26 Cal.4th at p. 255.) We apply the substantial evidence standard to the court's factual findings. (See *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32; *In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1497.)

B.      *Substantial Evidence Supports the Court's Order*

Father's opening brief sets out the extensive history of the proceedings and the events underlying the parents' custody dispute. Father only briefly addresses his principal argument that insufficient evidence supports the family court's April 2022 permanent custody order, and does not provide record citations supporting his argument. By way of example, Father contends that, "[r]ecent therapist summaries and respondent emails show mother['s] continuing uncooperativeness, deceitfulness, and negligence in Minor's treatment. They show mother unwilling to bring the minor to therapy or pay for it. They show her lying about taking the minor to therapy unilaterally; that she whispers to the minor during phone therapy. It shows her unwilling to share a therapist summary she attained illegally against court order which contradicts with the official summary. This list goes on." But there are no citations to the record, dates, or other information that would allow us to identify the documents Father relies upon.[3] (See *In re S.C.* (2006) 138 Cal.App.4th 396, 406

---

[3]      In the factual section of his opening brief, Father specifies that therapist summaries may be found in 13 pages of the clerk's

["When an appellant's brief makes no reference to the pages of the record where a point can be found, an appellate court need not search through the record in an effort to discover the point purportedly made."]; Cal. Rules of Court, rule 8.204(a)(1)(C) [appellate brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].)

Father cites four cases regarding the substantial evidence standard of review. (See *People v. Fudge* (1994) 7 Cal.4th 1075, 1100 [the appellate court's review for sufficiency of evidence requires that all reasonable inferences be drawn in support of the judgment, but the court must also consider the entire record, including evidence unfavorable to the judgment]; *People v. Johnson* (1980) 26 Cal.3d 557, 577 [the appellate court must review the whole record to determine whether there is substantial evidence to support the trial court's findings]; *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [the appellate court must consider all the evidence, not just that which supports the respondent's case, and must affirm the judgment if it is

---

transcript. The cited pages include 10 letters from various treatment programs that have provided mental health services to Jessica from 2012 to 2021. These letters do not support Father's contention that Mother was negligent, deceitful, or uncooperative.

During oral argument, Father cited additional pages in the record to support his contention that Mother refused to pay for Jessica's therapy and interfered with his relationship with Jessica. But our review of these documents indicates they do not support Father's contentions.

supported by substantial evidence].)[4]  But Father's opening brief does not present any cognizable argument showing the evidence before the family court was insufficient to support its custody order, nor does he demonstrate prejudicial error that would allow us to reverse the family court's order.  (See *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1107 [the California Constitution permits reversal only if an error "'resulted in *a miscarriage of justice*'"]; Cal. Const., Art. VI, § 13.)

Because the trial court's order is presumptively correct (see *Jameson v. Desta* (2018) 5 Cal.5th 594, 609), and Father failed to provide any reasoned argument challenging the court's order, supported by citations to the record and applicable legal authorities, he has forfeited or abandoned his arguments.[5]  (See *In re Sade C.* (1996) 13 Cal.4th 952, 954 [if appellant fails to raise

---

[4]  Father also cites *In re Michael G.* (1988) 44 Cal.3d 283 for the proposition that "the failure to consider all relevant evidence is an abuse of discretion and can be grounds for reversal on appeal."  But *In re Michael G.* does not stand for this proposition.  Instead, that case decided whether a minor made a ward of the court may be punished with confinement in a secured facility during non-school hours for willful disobedience of a juvenile court order to attend school.  (See *id.* at p. 287.)  *In re Michael G.* does not contain a reference to an abuse of discretion standard.

[5]  We recognize Father is self-represented, and whenever possible, we will not strictly apply technical rules of procedures or substantive law to deprive a self-represented litigant of a hearing.  Nevertheless, we must apply the procedural and substantive principles and rules of appellate review to a self-represented litigant's arguments on appeal, just as we would to arguments by litigants represented by attorneys.  (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985; *In re Marriage of Furie* (2017) 16 Cal.App.5th 816, 824.)

12

claims of reversible error, supported by argument and authority, he may be deemed to have abandoned his appeal]; *Lee v. Kim* (2019) 41 Cal.App.5th 705, 721 ["our review is limited to those issues that have been adequately raised and supported in the appellant's brief"]; see Cal. Rules of Court, rule 8.204(a)(1)(B) [appellate brief must "support each point by argument and, if possible, by citation of authority"].)

But even examining Father's arguments on the merits, the record before us demonstrates there is substantial evidence supporting the family court order. The record supports the family court's conclusion that a significant change in circumstances indicates that a different custody arrangement would be in Jessica's best interest. (See *Montenegro, supra,* 26 Cal.4th at p. 256.) Even accepting Father's generally positive description of his relationship with Jessica during her elementary school years, there is ample evidence in the record that this relationship changed when she entered middle school. The record contains Father's concessions that he took out his personal frustrations and stress on Jessica. This included throwing her phone into the neighbor's backyard, throwing her clothes on to the roof, and slapping Jessica once. The Department, after its investigation, determined the emotional abuse allegations against Father were substantiated. The social worker found that Father's behavior was "immature" and "inappropriate." Additionally, Mother testified that Father delayed her attempts to obtain medical attention for Jessica's ovarian cyst. Minor's counsel described to the court how Father disrupted his selection of a therapist for Jessica.

Further, 13-year-old Jessica made her wishes known to the court-ordered interviewer in December 2020: she did not want to

13

live with Father. In January 2022, minor's counsel confirmed that Jessica did not want to speak to or visit with Father. Jessica had reached a sufficient age and capacity to form an intelligent preference under section 3042, which the trial court was required to take into account. This is substantial evidence of a significant change of circumstances and of Jessica's best interests to support the family court's order granting Mother sole physical custody of Jessica and sole legal custody for the purpose of making decisions regarding Jessica's medical and mental health needs.

C.    *The Record Reflects the Family Court Provided Father a Full and Fair Opportunity to Present His Case*

Father also argues that he did not have the opportunity to present his case on January 25, 2022 because the court changed the hearing time from 1:30 p.m. to 9:30 a.m., depriving him of the ability to call his witnesses or to "organize."[6] In particular, Father argues the family court: did not allow him to submit

---

[6]    Father also contends the court erred when it refused to grant Father a continuance. But the record does not reflect Father asked for a continuance, nor does he demonstrate on appeal that good cause existed for a continuance. (Cal. Rules of Court, rule 3.1332(b) [a continuance may be granted only upon a showing of good cause, including the excusable unavailability of a party, witness, or trial counsel, or a party's excused inability to obtain evidence, or a significant unanticipated change in the status of the case occurred].) Father appeared to believe the court would continue the hearing on its own and without any request from the parties because "we haven't had a therapy [for Jessica] yet." But, as noted, when the court stated it would proceed with the evidentiary hearing, Father did not ask for a continuance.

14

transcripts of recordings indicating Mother made Jessica hang up on him; could not find his declaration and the exhibits attached to his July 16, 2021 request for order, which he asserts were timely filed; and did not give him the opportunity to cross-examine Mother or minor's counsel "after new allegations and subjects were brought up after lunch."

As the California Supreme Court has recognized, although "a party's opportunity to call witnesses to testify and to proffer admissible evidence is central to having his or her day in court" (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1357 (*Elkins*)), a court has broad authority and a statutory duty to control the proceedings before it, including the introduction and exclusion of evidence. (See Evid. Code, §§ 320, 352.) It is only when the court abuses this discretion "'in such manner as to prevent a full and fair opportunity to the parties to present all competent, relevant, and material evidence bearing upon any issue properly presented for determination'" that a litigant's due process rights are implicated. (*Elkins*, at p. 1357, italics omitted.) Absent the denial of a party's due process rights, "'[n]o form of civil trial error justifies reversal . . . where in light of the entire record, there was no actual prejudice to the appealing party.'" (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801.)

Father has forfeited this issue because he failed to present any cognizable argument demonstrating the family court erred or that such error prejudiced him. (See *In re Sade C., supra,* 13 Cal.4th at p. 994; *Lee v. Kim, supra,* 41 Cal.App.5th at p. 721.) Father, for example, does not identify which, if any, witnesses were available to testify in the afternoon of January 25, 2022 but not available in the morning. The record also indicates that when the court asked Father whether he had any witnesses to

15

testify at the hearing, Father said "no" and Father did not at that time state that any witnesses were unavailable due to the change in time.[7] Nor does Father specify what new allegations were raised that he was prevented from addressing at the hearing, or what evidence was contained in his July 16, 2021 request for order that was material to the issues before the court in January 2022.

But even reviewing Father's arguments on the merits, the record reflects that Father received his day in court. At the beginning of the hearing, the court told Father, "[i]f you need a minute to organize your thoughts, it's perfectly fine." Later in the proceeding, the court gave Father additional time to make his case, accepted his time estimate for cross-examination of Mother, and later allowed him an additional 20 minutes to cross-examine her. It also did not hold Father to technical rules of procedure: it reviewed and marked Father's exhibits even though minor's counsel and Mother's counsel did not have copies of them (it allowed counsel to review the documents); it told Father he could call witnesses upon an offer of proof even though the docket did not show Father submitted a witness list; and it helped to clarify

---

[7] For the first time at oral argument, Father named three witnesses he represented would have been available to testify. But we decline to consider the availability of these witnesses because Father did not notify the trial court of their availability in January 2022, and because Father failed to identify them in his appellate briefing. (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 826 ["Kathey had ample opportunity to raise the objection below. Her failure to do so deprived Richard of the chance to argue the issue or cure the alleged error and prevented the trial court from making any ruling on the point."]; see also *In re Sade C., supra,* 13 Cal.4th at p. 994.)

Father's questions during his cross-examination of Mother to elicit relevant and admissible testimony. Based on the record before us, we cannot say the family court did not provide Father a full and fair opportunity to present his case.

## DISPOSITION

The postjudgment custody order dated April 13, 2022 is affirmed. Father's appeal from the temporary custody order dated December 16, 2020 is dismissed.

MARTINEZ, P. J.

We concur:

SEGAL, J.

STONE, J.

17