Filed 5/28/25  Khorsand v. Khorsand CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| HAMED KHORSAND,<br><br>  Appellant,<br><br>  v.<br><br>CIARA KHORSAND,<br><br>  Respondent. | B336696<br><br>(Los Angeles County<br>Super. Ct. No. 22VEFL01746) |

APPEAL from an order of the Superior Court of Los Angeles County, Gia Kim, Judge.  Affirmed in part and dismissed in part.

Hamed Khorsand, in pro. per., for Appellant.

No appearance for Respondent.

_____

Hamed Khorsand (appellant), representing himself, appeals from a domestic violence restraining order protecting his estranged wife, Ciara Khorsand (respondent).  He does not challenge the factual findings supporting imposition of the restraining order—that he exerted coercive control over respondent's finances and economic resources within the meaning of the Domestic Violence Prevention Act (DVPA; Fam. Code,[1] § 6200 et seq.).  Rather, he contends the trial court erred in excluding certain evidence at the evidentiary hearing, issuing a temporary custody and visitation order concerning the parties' son, and ordering him to pay respondent's rent and utilities as part of the restraining order.  As we explain below, the temporary custody and visitation order is not appealable, and we therefore dismiss the portion of the appeal challenging it.  We reject appellant's other challenges to the restraining order and affirm.

## BACKGROUND

Appellant and respondent married in February 2020 and had a son that November.  On October 9, 2022, the parties had an altercation and appellant moved out of the family home with their son.

### A.     Appellant Files a Request for a Domestic Violence Restraining Order, and the Parties Resolve It by Stipulated Order

On October 10, 2022, appellant filed an ex parte request for a restraining order under the DVPA.  He stated in the request

---

[1] Undesignated statutory references are to the Family Code.

that during the October 9, 2022 altercation referenced above, respondent broke items in the home, screamed at him in front of their son, and approached him in a threatening manner while he was holding their son. He also stated that on September 24, 2022, respondent removed a butcher knife from a kitchen drawer in their home, showed it to him, approached him with the knife in her hand, and when he backed away, she put the knife against her own neck. Based on appellant's representations, the court issued a temporary restraining order, requiring respondent to stay away from appellant and their son, and an order granting legal and physical custody of the child to appellant, with no visitation for respondent.

In November 2022, while the temporary restraining order was still in effect, respondent began having supervised visitation with her son. Around the same time, appellant filed a petition for dissolution of the marriage. All proceedings described below were held in the dissolution action.

Appellant's request for a restraining order did not proceed to an evidentiary hearing because, on January 13, 2023, the parties settled the matter by written stipulation.[2] The terms of the stipulation included that respondent would have unmonitored visits with her son three times per week; the parties would share joint legal custody; each party would complete a 26-week anger management course and a 12-week parenting course;

---

[2] As we discuss later in this opinion, in the proceedings at issue in the present appeal, the trial court found after an evidentiary hearing that respondent did *not* commit domestic abuse within the meaning of the DVPA on September 24 or October 9, 2022.

3

and the parties would stay away from each other and refrain from contacting each other except for custodial exchanges and other contact regarding their son. On February 10, 2023, the trial court adopted the stipulation as its order.[3] As pertinent to the present appeal, under a heading that reads, "**HAMED'S DOMESTIC VIOLENCE RESTRAINING ORDER**," the stipulation also provides, "[Appellant]'s request for DVRO [domestic violence restraining order] will go off calendar. Any new DVRO filing must be based upon facts arising after the date of this stipulation and order."

**B.  A Month and a Half After the Stipulated Order Issues, Respondent Files a Request for a DVRO, and hereafter Appellant Files His Second Request for a DVRO**

On March 27, 2023, respondent filed an ex parte request for a DVRO, seeking protection from appellant for her and her son. In a declaration accompanying the request, respondent stated that on March 23, 2023, while she was out with her son, appellant called her, screaming and expressing anger that she had changed the locks on the apartment she used to share with him before he moved out. According to respondent, appellant threatened to obtain a duplicate key to the apartment, noting that his name remained on the lease, and threatened to stop paying the monthly rent ($2,900) and "food allowance" ($400) he had agreed to pay. Respondent contacted the police, stating she

---

[3] The judge who signed the stipulated order is the same judge who presided over the proceedings at issue in the present appeal.

4

feared appellant would be at the apartment when she arrived there. Officers met her at her apartment on March 23, 2023 and advised her to file a request for a restraining order against appellant. Respondent stated in her declaration that she was filing the request because appellant "continue[d] to disturb [her] peace and cause [her] emotional distress," and he was "constantly abusive towards [her] in front of [their] son."

In her declaration, respondent provided an account of the September 24 and October 9, 2022 incidents that were the basis of appellant's prior request for a restraining order against her. She described appellant as the aggressor and stated she feared for her safety during these incidents, which is why she grabbed a knife during the September 24 argument.[4] Respondent also described in her declaration appellant's control over her access to family finances, stating:

"[Appellant] has always had control of the bank account, my phone, our house phone, and I was never able to access community funds on my own. I had to depend on [appellant] to be in a good enough mood to give me money for the household or for our son. While I was pregnant and I left [appellant], he turned off my phone and turned off my credit card. I had no money for food, and because [appellant] pays for my car, he threatened to call the police and report my car stolen."

---

[4] Our resolution of appellant's contentions in the present appeal does not require further elaboration regarding these incidents. Nor does it require us to summarize other statements in respondent's declaration regarding alleged abuse by appellant that the trial court did not find was a basis to grant the restraining order against appellant.

5

In her request for a DVRO (form DV-100), respondent asked the court to grant her temporary use, possession, and control of a Mercedes automobile, representing that appellant had purchased the car for her. She also asked the court to order appellant to maintain health insurance coverage for her and their son and to continue to pay her rent, utilities, and car insurance. She also checked boxes on form DV-100 to request child and spousal support orders. On the form and in her declaration, she indicated that prior to the parties' separation, appellant was the "sole provider" and wanted her to be a "homemaker." She also stated she "just went back to work," but her income was "minimal." She attached an income and expense declaration, listing the amounts of her rent, utilities, and other expenses, and stating she earned around $1,054 per month, working part-time as a behavioral therapist. She also attached form DV-105 (Request for Child Custody and Visitation Orders), asking the court to award her sole legal and physical custody of the parties' son, with no visitation for appellant.

The trial court issued a temporary restraining order (form DV-110), requiring appellant to stay away from respondent, except during custody exchanges, and to refrain from harassing her, disturbing her peace, or exerting coercive control over her. The court declined to issue an order of protection for the parties' son, as respondent had requested. Pending an evidentiary hearing, the court granted respondent temporary use, control, and possession of the Mercedes automobile, and ordered appellant to maintain health insurance for respondent and their son; but the court declined to alter the existing child custody arrangement or require appellant to pay respondent's rent, utilities, and car insurance in advance of the hearing. The

6

temporary restraining order form indicated that the court would entertain any requests for child and spousal support at the evidentiary hearing.

Appellant paid respondent's rent in April 2023 and then stopped making rent payments for the apartment where she lived.

## C. Other Relevant Proceedings Prior to the Evidentiary Hearing

At a pretrial hearing on April 21, 2023, appellant's counsel argued that the February 10, 2023 stipulation and order resolving appellant's prior request for a DVRO precluded respondent from basing her current request for a DVRO on alleged incidents of abuse that occurred before the parties reached their settlement. As mentioned above, the stipulation and order provides, "Hamed's [appellant's] request for DVRO will go off calendar. Any new DVRO filing must be based upon facts arising after the date of this stipulation and order." This language appears under a heading that reads, "**HAMED'S DOMESTIC VIOLENCE RESTRAINING ORDER**." The trial court concluded that under the terms of the stipulation and order, *appellant* agreed to base any subsequent request for a DVRO on "new events" only, and not the incidents previously raised in his request for a DVRO that the parties resolved by stipulation. The court concluded there was nothing in the stipulation and order indicating *respondent* similarly agreed to be bound by that provision. Accordingly, the court ruled that respondent could raise alleged incidents of abuse that predated the settlement in support of her request for a DVRO.

7

In May 2023, appellant filed his second request for a DVRO against respondent. He did not include this request in the appellate record before us, but it is relevant to the present appeal, as the evidentiary hearing the trial court subsequently held (described below) concerned both respondent's and appellant's requests for a DVRO. It appears from the reporter's transcripts in the appellate record that the trial court did not issue a temporary restraining order against respondent after appellant filed his second request for a DVRO.

In advance of the evidentiary hearing, respondent filed a request for modification of the existing child custody and visitation arrangement set forth in the February 10, 2023 stipulation and order. The custody matter was pending at the time the trial court heard evidence in support of the requests for a DVRO.

### D. After an Evidentiary Hearing, the Trial Court Issues a Permanent Restraining Order Against Appellant

At the outset of the evidentiary hearing on August 25, 2023, the trial court explained that it would hear evidence concerning child custody and visitation at a later date, after it ruled on the DVRO requests. The court also explained that, consistent with its prior ruling, although appellant was precluded from raising events predating the February 10, 2023 stipulation and order "as a sword, meaning in support of [appellant]'s own request for a restraining order," he could raise "incidents predating the stipulation as a shield from [respondent]'s request for a restraining order."

The court heard testimony in support of respondent's and appellant's requests for a DVRO over four days between August

8

25, 2023 and November 3, 2023.[5]  Both respondent and appellant testified, in addition to other witnesses called by the parties.[6]  On November 3, after appellant presented his case in support of his DVRO request, his counsel made an offer of proof regarding pre-stipulation incidents of respondent's alleged physical abuse that he would have raised if the court had not excluded the evidence pursuant to the terms of the stipulation and order.

At a hearing on December 15, 2023, the trial court heard argument from the parties and made its ruling.  The court determined respondent proved by a preponderance of the evidence that, "starting at least in 2020 and extend[ing] . . . to at least March" 2023, appellant disturbed respondent's peace and exercised "coercive control over" her by controlling, regulating, and monitoring her finances and economic resources.[7]  For example the court found that in or around August 2020, during a period of time when respondent was unable to work and desired to leave the relationship, appellant blocked her access to a credit card she used to purchase food and threatened to disable her cell phone and report the car she drove as stolen.  The court

---

[5] Each side was represented by counsel at the evidentiary hearing.

[6] Our resolution of appellant's contentions on appeal does not require a summary of the witnesses' testimony.  Appellant does not challenge the sufficiency of the evidence supporting the trial court's factual findings.

[7] Under the DVPA, "abuse" includes " 'disturbing the peace of the other party' " through "coercive control," by "[c]ontrolling, regulating or monitoring the other party's . . . finances, economic resources, or access to services."  (§§ 6203, 6320, subd. (c)(3).)

referenced other incidents in 2022, finding a "pattern" of coercive control exhibited by appellant's threats "to cut off financial resources, transportation, or communication." The court also found that in March 2023, "as part of the pattern of control," appellant "destroy[ed respondent]'s mental or emotional calm" by threatening to stop paying her rent after she changed the locks at the apartment where he no longer lived and had "no real reason" to have a key.[8]

The trial court also found that neither respondent nor appellant committed domestic abuse against the other on either September 24 (the incident involving the knife) or October 9, 2022 (the altercation that precipitated appellant's move from the family home and the filing of his first DVRO request). And the court determined appellant failed to prove that respondent committed any acts of domestic abuse within the meaning of the DVPA that occurred after the parties settled their prior disputes and entered into the stipulation. The court explained that the stipulation and order did not preclude appellant from raising pre-stipulation incidents of respondent's alleged domestic abuse at the upcoming custody and visitation proceedings.

The trial court issued an 18-month permanent restraining order, requiring appellant to stay away from respondent and to refrain from contacting her (except about their son), harassing her, disturbing her peace, or exerting coercive control over her. The court declined to include the parties' son in the order of protection. The court granted respondent use, control, and

---

[8] The trial court determined other incidents raised by respondent did not constitute abuse within the meaning of the DVPA, and we need not elaborate on those incidents here.

possession of the Mercedes automobile and ordered the parties not to transfer any property or change any insurance policies, pending resolution of property issues in the dissolution proceedings.

Appellant objected to respondent's request that the court include in the restraining order a requirement that he pay her rent and utilities. Appellant's counsel argued that respondent should file a separate request for support, and the parties should submit updated income and expense declarations, before the court ordered payment of rent and utilities. The trial court asked respondent about her current income, and she stated she worked around 30 hours per week, earning $16.50 per hour.

Appellant's counsel next argued that box 23 on the DVRO (form DV-130), ordering payment of "**Debts (Bills) Owed for Property**," does not apply to rent and utilities. Counsel asserted box 23 only applies to debts incurred as a result of the domestic violence (see § 6342.5, subd. (b)), such as identity theft or personal property damage, or to payment of liens or encumbrances on property (see § 6342.5, subd. (a)), such as a mortgage payment or a car payment. The trial court concluded, "[T]here's no intellectual difference between a mortgage and rent as far as how it affects a party" because "the rent has to get paid or she'll be evicted."

After taking a brief recess to research the issue, and then hearing further argument, the court concluded it was permissible to order appellant to pay respondent's rent and utilities as part of the restraining order. The court took sworn testimony from the parties regarding the amount of the rent and ordered appellant to pay $2,595 per month for respondent's rent, plus the utility bills for the apartment. The court stated that the order for payment of

11

rent and utilities could be modified if the parties later made "a showing of support or other resources from which that can be paid."

Respondent's counsel noted that respondent checked the box on her DVRO request (form DV-100) asking the court to order spousal support. The court concluded it did not have sufficient income and expense information before it to make spousal or child support orders at that time. Respondent's counsel represented that respondent planned to file a request for support.

Appellant objected to any modification of the existing custody and visitation arrangement in advance of a parenting plan assessment (PPA) custody evaluation and an evidentiary hearing. Respondent's counsel urged the court to issue a modified temporary child custody order, noting that respondent's current visitation was limited under the terms of the February 10, 2023 stipulation and order, and the PPA and evidentiary hearing would not be held for at least three months. The trial court stated it was inclined to grant respondent more time with her son, and explained that any child custody and visitation order issued in conjunction with the DVRO would be temporary and without prejudice to the parties seeking a different arrangement at the child custody hearing. The court asked the parties to meet and confer regarding child custody and visitation for the upcoming winter holidays, noting that the stipulation and order was silent on holiday visitation.

After a brief recess, the parties explained that they had not reached an agreement regarding temporary custody and visitation, and they presented competing proposals to the court. Over appellant's objection, the trial court awarded sole legal custody of the parties' son to respondent and granted her

12

visitation every other weekend (from 5:00 p.m. on Friday to 6:00 p.m. on Sunday) and for three hours every Wednesday evening.[9] The court stated that the presumption set forth in section 3044 applied against appellant, and he would have an opportunity to rebut the presumption at the upcoming evidentiary hearing regarding custody and visitation. (See § 3044, subd. (a) ["there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child"].) Notwithstanding the presumption, the court awarded sole physical custody of the child to appellant. The court also issued a Christmas visitation schedule. The court reiterated that the custody and visitation order was temporary and without prejudice, pending the upcoming evidentiary hearing. The parties stipulated that the temporary custody order did not "establish a status quo whatsoever."

Appellant appealed from the DVRO. He acknowledged in his appellate brief and included documents in his appendix indicating that after a PPA custody evaluation and subsequent evidentiary hearing, at which he was permitted to raise alleged incidents of respondent's domestic abuse that predated the stipulation and order, the trial court entered a judgment regarding custody and visitation. Neither party appealed from the judgment.

---

[9] Under the February 10, 2023 stipulation and order, respondent had three unmonitored visits with her son per week, including a weekend day visit, but no overnight visitation.

## DISCUSSION

## A. The Trial Court Did Not Err in Interpreting the Parties' Prior Written Stipulation

Appellant contends the trial court erred in interpreting the February 10, 2023 stipulation and order to preclude only appellant, and not respondent, from raising pre-stipulation incidents of domestic abuse in a post-stipulation request for a DVRO. We disagree with appellant's position.

As appellant points out in his brief, we review the stipulation de novo. "Generally, the interpretation of a settlement agreement is governed by the same rules that apply to other contracts. [Citation.] 'When no extrinsic evidence is introduced, or when the competent extrinsic evidence is not in conflict, the appellate court independently construes the contract.' " (*Coral Farms, L.P. v. Mahoney* (2021) 63 Cal.App.5th 719, 726; *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165-1166.) Here, there is no extrinsic evidence, and our task is to determine the mutual intention of the parties at the time they made their agreement, based on the language in the stipulation. (See *Waller v. Truck Ins. Exch., Inc.* (1995) 11 Cal.4th 1, 18; Civ. Code, § 1636.)

At the time the parties entered into the stipulation, appellant had a request for a DVRO pending; respondent did not. The stipulation resolved appellant's DVRO request without an evidentiary hearing, using the following language:

"**E. HAMED'S DOMESTIC VIOLENCE RESTRAINING ORDER**

"a. Hamed's request for DVRO will go off calendar. Any new DVRO filing must be based upon facts arising after the date of this stipulation and order.

14

"b. The parties shall not contact the other directly or indirectly by telephone, mail, e-mail, text message or other electronic means, except peaceful contact regarding the parties' minor child is allowed.

"c. The parties shall stay away from each other, each other's home, each other's vehicle and each other's job or workplace, except for custodial exchanges."

We agree with the trial court that there is no language in the stipulation indicating that paragraph E.(a). applies to respondent's, as of then, unasserted claims against appellant. The import of the provision is that appellant agreed to resolve his DVRO request with prejudice, and he could not later assert the same claims against respondent. The provision does not limit the claims respondent could assert in a DVRO request.

Even assuming for purposes of argument that the trial court erred in interpreting the stipulation, appellant could not prevail in this appeal. "[E]rror alone does not warrant reversal. 'It is a fundamental principle of appellate jurisprudence in this state that a judgment will not be reversed unless it can be shown that a trial court error in the case affected the result.' [Citation.] ' "The burden is on the appellant, not alone to show error, but to show injury from the error." ' [Citation.] 'Injury is not presumed from error, but injury must appear affirmatively upon the court's examination of the entire record.' [Citation.] 'Only when an error has resulted in a miscarriage of justice will it be deemed to be prejudicial so as to require reversal.' [Citation.] A miscarriage of justice is not found 'unless it appears reasonably probable that, absent the error, the appellant would have obtained a more favorable result.' " (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822-823.)

15

Appellant argues that because of the "one-sided[]" manner in which the trial court interpreted the stipulation, he "was not given an evidentiary hearing" to demonstrate "respondent was the aggressor and therefore should not have been allowed to file a restraining order" against him. His argument is not well taken for the following reasons. First, the court allowed him to present evidence regarding pre-stipulation incidents as a "shield" in defending himself against the claims respondent made in her DVRO request. Second, as reflected in his offer of proof at the evidentiary hearing, the pre-stipulation incidents he wanted to raise as a "sword" in support of his own DVRO request involved alleged physical abuse by respondent. The DVRO issued against him was based on factual findings regarding his exertion of coercive control over respondent's finances and economic resources within the meaning of the DVPA—factual findings he does not challenge in this appeal. He does not explain how proof of physically aggressive conduct by respondent would have somehow disqualified her from obtaining a restraining order against him based on proof of his financial abuse. Mutual restraining orders are permissible under the DVPA. (See *Herriott v. Herriott* (2019) 33 Cal.App.5th 212, 226 [a court may enter a mutual restraining order under the DVPA where "both parties acted as a primary aggressor and . . . neither party acted primarily in self-defense"].) Appellant has not shown he would have achieved a more favorable result on respondent's DVRO

request if the trial court had allowed him to present the excluded evidence.[10]

## B. The Temporary Custody and Visitation Order Is Not Appealable

Appellant contends the trial court erred in modifying the custody and visitation arrangement as part of the DVRO without holding an evidentiary hearing on custody and visitation issues.

"[I]t is well settled that temporary custody orders are nonappealable," including those issued in connection with a DVRO. (*Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1089; *In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1496, fn. 5.) " 'A temporary custody order is interlocutory by definition, since it is made pendente lite with the intent that it will be superseded by an award of custody after trial.' " (*Smith*, at p. 1090, quoting *Lester v. Lennane* (2000) 84 Cal.App.4th 536, 559 (*Lester*).)

At the DVRO hearing, the trial court made clear that the custody and visitation order it issued was temporary and without prejudice to the parties seeking a different arrangement at the upcoming child custody evidentiary hearing. Appellant acknowledges in his appellate brief that the trial court held "a separate custody trial" at which he was permitted to present evidence of pre-stipulation incidents that the court excluded from

_____

[10] It does not appear appellant is challenging the denial of his own request for a DVRO against respondent. He did not include his DVRO request and supporting papers in his appendix, and he does not argue he was prejudiced in any way by the denial of his DVRO request. Rather, his contentions on appeal relate to his complaints about the DVRO issued against him and the temporary child custody and visitation order.

the evidentiary hearing on the DVRO requests. He included in his appellant's appendix documents related to that later custody trial. He did not appeal from the final judgment on custody and visitation.

We dismiss the portion of appellant's appeal challenging the temporary custody and visitation order because the order is not appealable, and even if it were, it is moot. The temporary order is no longer in effect, and appellant does not challenge the final custody judgment.[11] A reversal of the temporary order could provide no "effectual relief" for appellant. (See *Lester*, *supra*, 84 Cal.App.4th at p. 566.)

## C. The Trial Court Did Not Err in Ordering Appellant to Pay Respondent's Rent and Utilities

Appellant contends the trial court erred in requiring him to pay respondent's rent and utilities as part of the DVRO. In support of this contention, he advances the arguments his counsel made in the trial court: (1) that box 23 on the DVRO (form DV-130), titled "**Debts (Bills) Owed for Property**," applies to debts incurred as a result of the domestic violence (see § 6342.5, subd. (b)) or to the payment of liens or encumbrances on property (see § 6342.5, subd. (a)), such as a mortgage payment or

---

[11] Appellant does not argue he "suffered prejudice [at the custody trial] . . . because of the status quo created . . . by the earlier temporary custody order[]." (See *Lester*, *supra*, 84 Cal.App.4th at p. 565.) Nor could he. He acknowledges that the trial court allowed him to present evidence of pre-stipulation events at the custody trial. Moreover, the parties stipulated at the DVRO hearing that the temporary custody order did not establish a status quo that would carry over to the custody trial.

a car payment, but not to rent and utilities; and (2) that the court should not have ordered payment of rent and utilities absent a separate request for support with updated income and expense declarations from the parties.

We review a trial court's ruling on a request for a DVRO for abuse of discretion. (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 115.) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason." ' " (*In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 702.) "All exercises of discretion must be guided by applicable legal principles, . . . which are derived from the statute under which discretion is conferred." (*Farmers Ins. Exchange v. Superior Court* (2013) 218 Cal.App.4th 96, 106.) "We presume that the court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise." (*Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151, 158.)

In enacting the DVPA, "the Legislature was concerned with a victim's inability to live apart from [the abuser] due to a lack of financial resources." (*In re Marriage of J.Q. & T.B.* (2014) 223 Cal.App.4th 687, 702.) To that end, a court has "broad authority under the DVPA to issue 'a panoply of remedial orders' " in conjunction with the DVRO. (*Parris J. v. Christopher U.* (2023) 96 Cal.App.5th 108, 132.) For example, the court may order spousal and child support (§ 6341) and restitution "for loss of earnings and out-of-pocket expenses . . . incurred as a direct result of the abuse" (§ 6342, subd. (a)(1)). (*Ashby v. Ashby* (2021) 68 Cal.App.5th 491, 516.) Under section 6342.5, subdivision (a), the provision the trial court cited in ordering the payment of rent and utilities, a "court may issue an order determining the use,

19

possession, and control of real or personal property of the parties during the period the order is in effect and the payment of any liens or encumbrances coming due during that period." Under subdivision (b) of section 6342.5, the provision cited by appellant, the "order described in subdivision (a) *may* include a finding that specific debts were incurred as the result of domestic violence without the consent of a party" (e.g., a finding of identity theft). (Italics added.) There is no *requirement* in section 6342.5 that the payments described in subdivision (a) be owed as a result of the domestic violence.

Appellant has cited no authority indicating it is impermissible for a court to order payment of rent and utilities in connection with a DVRO, and we are aware of none. Indeed, the form respondent filled out to request the DVRO (form DV-100) specifically indicates that the court may order rental payments. Paragraph 22 of form DV-100, which respondent checked and filled out, states, in pertinent part:

"**Pay Debts (Bills) Owed for Property**

"(If you want the person in [paragraph 2] to pay any debts owed for property, list them and explain why. The amount can be for the entire bill or only a portion. Some examples include *rent*, mortgage, car payments, etc.)" (Italics added.) Thus, it is clear the trial court did not err in concluding it could order appellant to pay respondent's rent under the DVPA. We can conceive of no reason why the trial court could not similarly exercise its broad remedial authority under the DVPA to order appellant to pay respondent's utility bills for the rental property.

Appellant has not demonstrated the trial court abused its discretion in ordering payment of respondent's rent and utilities based on the information before the court. Appellant had been

20

paying respondent's rent and utilities prior to the time she filed the DVRO request against him.  He did not assert at the hearing that his financial circumstances had changed and he no longer had the means to make the payments.  Rather, he stated he wanted respondent to file a separate request for support and have the court rule on that.  The court determined, however, that respondent needed financial assistance immediately.  Based on information before the court regarding respondent's income, the financial abuse appellant perpetuated against respondent throughout the marriage, and the fact there were no support orders in place, we conclude the trial court did not exceed the bounds of reason in ordering appellant to pay respondent's rent and utilities as part of the DVRO issued against him.

Appellant has not demonstrated error, and we affirm the DVRO.

## DISPOSITION

Appellant's appeal from the temporary custody and visitation order is dismissed.  The DVRO is affirmed.  No costs are awarded on appeal.

NOT TO BE PUBLISHED

M. KIM, J.

We concur:

BENDIX, Acting P. J.

WEINGART, J.

21